## 11123

### KEISTLER CO. v. ÆTNA INS. CO.

#### (117 S. E., 70)

1. INSURANCE—IN ACTION ON FIRE INSURANCE POLICY, CAUSE AND TIME OF FIRE HELD QUESTIONS FOR JURY.—In an action on a policy covering a stock of goods, providing that, if a material part of the building containing the goods shall fall except as the result of fire, the policy shall immediately cease, whether the fire was caused by the collapse of the roof and whether the fire originated before or after the collapse of the roof *held* for the jury.

2. INSURANCE—INSURER HAS BURDEN OF PROVING THAT FALL OF PART OF BUILDING WAS NOT CAUSED BY FIRE.—In an action on a policy covering a stock of goods, where insurer set up a defense under a provision of the policy providing that, if a material part of the building containing the goods shall fall except as the result of the fire, the policy shall immediately cease, insurer had the burden of proving this defense.

3. TRIAL—CASE SUBMITTED TO JURY WHEN INFERENCES FROM EVIDENCE IN DOUBT.—A case should be submitted to the jury, not only when the testimony is conflicting, but also when the inferences from it are in doubt.

4. INSURANCE—CONDITION SUBSEQUENT TO ACCEPTED RISK MAY BE WAIVED.—Under a fire insurance policy containing a provision that, if any material part of the building shall fall except as a result of fire, the policy shall immediately cease, there is an accepted risk with a condition subsequent, and not an accepted risk, and hence the condition is subject to waiver.

Before RICE, J., Chester, November, 1921.  Affirmed.

Action by The Keistler Co. against Ætna Insurance Co. of Hartford, Conn.  Judgment for plaintiff and defendant appeals.

*Mr. Wm. Anderson Clarkson,* for appellant, cites: *"Fallen building clause":* 127 Mass., 306; 181 N. Y., 472; 37 Mo., 430; 88 Fed., 243; 71 S. W., 812; 102 Pac., 812; 112 Pac., 546.  *No waiver after fire:* 54 S. C., 371; 55 S. C., 589; 78 S. C., 396.

*Mr. John M. Robinson,* for National Fire Insurance Co. as *amicus curae,* cites: *Excepted risk and waiver inapplicable:* 181 N. Y., 472; 37 Mo., 430; 88 Fed., 243; 103 N. E., 345.  *Joyce, Ins.,* 3684; 145 Mass., 226; 177 N. W., 242; 212 S. W., 310; 230 S. W., 540; 106 S. E., 203.

*Messrs. Gaston & Hamilton,* for respondent, cite: *Failure to return unearned premium evidence of waiver:* 102 S. C., 115; 104 S. C., 403.  *Tender must be made before suit:* 107 S. C., 594; 63 S. C., 297; 97 S. C., 379.  *Waiver is for the jury:* 70 S. C., 205; 55 S. C., 6.  *Putting insured to trouble and expense after breach may be waiver:* 54 S. C., 603; 57 S. C., 368; 55 S. C., 6; 26 C. J., 283.  *Question as to whether plaintiff would have accepted tender if made was properly excluded:* 115 S. C., 231; 110 S. C., 346; 102 S. C., 143; 104 S. C., 384; 104 S. C., 117.  *Actual tender necessary:* 26 C. J., 142, 243.  *Falling building clause:* 155 Cal., 708; 18 A. & E. Ann. Cas., 579.

February 1, 1923.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action on a policy of fire insurance.  The allegations of the complaint are as follows:

"(1 and 2) [The allegations of these paragraphs are formal.]

"(3) That on the 21st day of December, 1920, the defendant insured against all direct loss or damage by fire the

Keistler Company for the term of one year from date of the policy, to the amount of $2,500, its entire stock of general merchandise, contained in a brick building, with metal roof, on the west side of extension of Main Street, near Great Falls, and the said defendant issued its said insurance policy in writing, bearing No. 1116, and delivered the same to the plaintiff at and for a money consideration as a premium.

"(4) That on the 26th day of January, 1921, a fire occurred, thereby damaging and destroying completely the entire stock of goods of the plaintiff, which was insured by the defendant company, under said policy, against all direct loss or damage by fire.

"(5) That the plaintiff's loss and damage to the stock of goods, insured by the defendant company, was far in excess of $5,500, the total amount of insurance carried on the stock of goods, the defendant company having concurred in total insurance to said amount, and the plaintiff's loss was total.

"(6) That under the terms of the said policy the defendant company is now liable to the plaintiff for the sum of $2,500, with interest thereon from the 26th day of January, 1921, and that the said company has failed and refused, and still fails and refuses, to pay the plaintiff the sum of $2,500, or any other sum, in settlement of its liability to the plaintiff, as aforesaid."

The answer of the defendant is as follows:

For a first defense:

"(1) That it denies each and every allegation in the said complaint contained."

For a second defense:

"(1) That the contract of insurance mentioned in the complaint herein provides among other things as follows, to wit: 'If a building or any material part thereof falls, except as a result of fire, all insurance by this policy on such building or its contents shall immediately cease.'

"(2) That on or about the 26th day of January, 1921, the roof of the building containing stock of merchandise insured by said policy fell in and demolished said building and the contents thereof.

"(3) *That thereafter, and as a result of the falling roof, a stove used in heating said building was overturned, from which the debris and wreck caused by the said falling roof caught fire,* and the same was totally destroyed. (Italics added.)

"(4) That, in accordance with the provisions of said policy set out above, all insurance upon the contents of said building immediately ceased upon the falling in of the roof set out above."

On the first trial of this case the jury failed to agree, but on the second trial there was a verdict in favor of the plaintiff for $2,500, with interest from the 15th day of March, 1921, and the defendant appealed upon exceptions, which its attorney has divided into three classes. In the first class are included exceptions numbered 2, 4, 6, and 8, which are as follows:

(2) "Because his Honor, the presiding Judge, erred in refusing to grant the defendant's motion for a direction of a verdict, on the ground that the only inference that can be drawn from the testimony is that the building, which contained the goods insured in the case, or a material part of it, collapsed before the fire, and that, in accordance with the terms of the policy, the insurance under said policy ceased at that time, and that there is no evidence of any new contract of insurance; the error being that said provision constituted an excepted risk against which defendant did not insure, and for which it collected no premium."

(4) "Because his Honor, the presiding Judge, erred in refusing to charge defendant's first request to charge, to wit: 'If you find that the roof and part of the side walls of the building which contained the stock of merchandise insured under the policy involved in this case fell and col-

lapsed, and that a fire started immediately thereafter and consumed the merchandise covered by the said policy, then, and in that event, I charge you that you must find for the defendant.' The error being that it contains a sound proposition of law applicable to the case, and is not a charge on the facts."

(6) "Because his Honor, the presiding Judge, erred in refusing to charge defendant's third request to charge, to wit: 'I charge you that the defendant, under its policy sued on in this case, insured a stock of merchandise in a building that was standing and intact, and not in a building a material part of which had fallen. To find the defendant liable for a fire which had destroyed the contents of a building that had fallen, you would have to find that the defendant had insured the plaintiff against that special risk, or that it had made a new and distinct contract of fire insurance after the collapse of the building. I charge you that there is no evidence of any such contract in this case'— the error being that it contains a sound proposition of law applicable to the case, and is not a charge on the facts."

(8) "Because his Honor, the presiding Judge, erred in refusing to charge defendant's seventh request to charge, to wit: 'The undisputed testimony in this case shows that the roof of the building containing the merchandise covered by the policy of insurance sued on in this case and also part of the side walls of same fell before the goods caught fire. Under these circumstances, I charge you that the policy of insurance sued on in this case ceased at the time of the collapse above mentioned and that there being no evidence of a new contract of insurance your verdict must be for the defendant'—the error being that it contains a sound proposition of law applicable to the case and is not a charge on the facts."

In stating the questions raised by these exceptions the defendant's attorney in his argument says:

"Exceptions 2, 4, 6 and 8, in which the trial Court's

building containing the goods insured by the defendant-refusal to grant a directed verdict on the ground that the appellant had fallen in before the fire, and that under the terms of the policy all insurance under it ceased at the time of the collapse, and its refusal to charge the jury to the same effect, is questioned."

A. N. Keistler thus testified for the plaintiff:

"On the night of the 26th the roof to our building fell in, and it immediately caught fire, and everything was destroyed in the building. We notified Mr. Mullican, the agent, on the next morning, and told him we would like to commence cleaning up and get ready to rebuild as soon as possible. He came up and looked over it, satisfied himself that it was a complete loss, and told us to go ahead; that the company would settle with us; that it would be all right to go ahead and clean up and get ready to rebuild. I told him how it occurred. We had no insurance on the building. Heavy sleet and ice caused the roof to fall. The stove was not turned over. I could not say what caused the fire. The goods were destroyed by fire. The roof, which was solid tin, fell in, and the goods, I would say, were fairly well protected by this roof covering; very little damage if there had been no fire. Value of stock was $15,-000. We went ahead to clear up the place and rebuild. About three weeks after the fire, an insurance adjuster, Mr. Wallace, came to see me. He told us he came to investigate the loss. I took him down, showed him the place, and told him how the fire occurred. He asked for the policies, and we gave them to him."

*Cross-Examination by Mr. Clarkson*

"My house is about 200 yards from the store. We have no street lights. I was at home. The bookkeeper called me over the 'phone and told me he heard the roof crack. I immediately ran to the store, and when I got there the roof was in, and the fire had started. Our store faces about

north and south. It is 75 feet long and 35 feet wide. No pillars in the middle. It was a truss roof. When the roof fell in like that, the outside fell down. The wall on the east side broke about 2 or 3 feet from the front at the top, angled down until about 3 or 4 feet from the ground, and then ran back to about 10 feet from the back, where about 8 to 10 feet of the wall was left standing. On the west side the wall broke off near the front and angled down to the ground, nearer the front than the center. At the southwest corner we had an office about 15 feet square that held the wall and roof up. The break started at the top, about the office partition, and went right down. About 15 feet of the wall was left standing. We have shelves on both sides of our store, back to the office on the west side, and the full length on the east side, except for a 4 x 8 door. We had shelves on the back end. I approached the front of the building from the west side, and went around to the office, as soon as I got there, to look for the boys, and found them back there. The goods were scattered over the ground a very little. When the roof came in at the top, it spread out, and practically all of the goods were covered up by it. Two men were in the store at the time it fell. One telephoned me from the office. * * * The stove was about the middle of the store; stove pipe went to a flue which went from the girders, up through the roof. The pipe and the bricks composing the flue had fallen in over the stove."

J. R. Goudelock thus testified for the plaintiff:

### Direct Examination by Mr. Hamilton

"I was working for Keistler Company, at Great Falls, on January 26th. The roof fell in, part of it, and a fire immediately afterwards destroyed our stock of goods. Mr. Roddy was with me. Seven inches of sleet on the roof caused it to fall in. The stove was not turned over. It fell near the center. I was in the building at the time. It

kinder came down and sheltered the whole stock of goods, and the fire immediately afterwards destroyed it. The falling of the building didn't damage it at all. I used the telephone in the office before it fell. Don't know what caused the fire. I was present when the adjuster came about three weeks later.  *  *  *  "

### Cross-Examination by Mr. Clarkson

"I was in the office at the southwest corner of the building. When the roof crashed, I went out the window. It happened about 8:30 at night. I was in the office at the time I 'phoned Mr. Keistler; and I could see the stock back there then. It didn't fall any more after I got out of the office at all.

"Court: Did you stay in there until after the roof was down? A. Yes, sir; stayed in there until after the roof was down. It was pretty dark. I could see the stove and the stock from the back end. The roof fell on the counter in the center, and one of the side walls fell on the ground. One wall was standing when the fire occurred, and the fire burning it caused it to fall loose. On the side where the wall had fallen the goods were down, and the roof on top of them, sheltering them."

### Redirect Examination

"The store was lighted with electric lights. Stove was not turned over. The fire had not started when I 'phoned Mr. Keistler. That was the first thing I did. There was a little space of time between the falling in of the roof and the fire. I noticed the fire while I was going out of the building."

The burden rested upon the defendant to prove the allegations of its answer. In the case of *Copeland v. Western Assurance Co.,* 43 S. C., 29; 20 S. E., 755, the Court uses this language:

"1. That where the defendant claims that the plaintiff has not a right of recovery on the policy of insurance, by reason of the fact that he failed to comply with the requirements of the policy, such objection must be set up in his answer to the complaint. 2. That where the defendant sets up a defense in his answer that the plaintiff is barred of his right of recovery on the policy of insurance, by reason of his failure to perform certain things therein required to be done on his part, it is not incumbent on the plaintiff to introduce testimony showing such performances by him, and, consequently, a failure to introduce testimony does not entitle the defendant to an order of nonsuit. 3. That where the defendant sets up such defense in his answer, and the facts brought out during the introduction of plaintiff's testimony in chief show that there has not been performance by the plaintiff of such requirements of the policy, still the defendant would not be entitled to an order of nonsuit, because such order would deprive the plaintiff of his right to show waiver or estoppel on the part of the defendant to make such objection." ·

The defendant alleged in its answer that the stove used for heating the building was overturned. It was incumbent on it to prove that allegation, yet no witness testified to such fact, while, on the contrary, A. N. Keistler and J. R. Goudelock both testified that the stove was not turned over. The store was lighted with electricity, and the stovepipe went to a flue which went to the girders up through the roof. It is far more probable that the fire was caused by an electric wire, or from the flue, than from the stove. In any event, it is unreasonable to suppose that the falling of the bricks from the flue and the stovepipe caused the fire to be scattered from the stove, as it was not overturned by the fall of the debris. There were persons in the store at the time the roof caved in, yet no witness testified that he saw any fire from the stove communicated to the goods.

The testimony as to when the fire first commenced to burn is purely circumstantial. It may have been burning for a considerable length of time before it broke out or was discovered. As the testimony in regard to the cause of the fire was conflicting the issue raised by the pleadings was properly submitted to the jury.

A case should be submitted to the jury, not only when the testimony is conflicting, but likewise where the inferences from it are in doubt. When the defendant failed to show its allegation that "as a result of the falling roof the stove was turned over," it could not successfully contend that a verdict should have been directed in its favor. These exceptions are overruled.

The exceptions in the second group are as follows:

(5) "Because his Honor, the presiding Judge, erred in refusing to charge defendant's second request to charge, to wit: 'I charge you that the question of waiver is not involved in this case'—the error being that it contains a sound proposition of law applicable to the case, and is not a charge on the facts."

(9) "Because his Honor, the presiding Judge, erred in charging the jury as follows, to wit: 'There is such a thing known as waiver, gentlemen, and whether or not they waived that condition (fall of building) in the policy is a question which you are going to have to now determine,' and 'it is for you to say in this case, gentlemen, as to whether there was any waiver, or whether or not the insurance company did give up its rights to insist on this clause in the policy, which voided the policy when the bulding fell'—the error being that the doctrine of waiver cannot be made applicable to this case, a collapsed building being an excepted risk under provisions of the policy, and all facts upon which the alleged waiver was based having occurred after the fall of the building and after the insurance had ceased."

In discussing these exceptions the defendant's attorney says:

"The point, which includes exceptions 5 and 9, raises the question as to whether or not the contract of insurance, having ceased and determined before the fire which destroyed the goods formerly insured by the contract, could by acts of waiver after the fire and after the goods had been destroyed be revived and made a living, vital contract at the time of the fire. To state the proposition is to deny it. Yet at the trial plaintiff-respondent contended that the 'fallen building clause' had been waived by acts of the defendant-appellant's agents after the fire, and the trial Court, accepting this view of the case, charged the jury that the clause could be waived in this case, and that it was for them to say whether or not it had been waived. This charge is the basis of the ninth exception."

The defendant's attorney erroneously assumes that the contract of insurance had ceased and determined before the fire occurred which destroyed the goods. That was the main issue in the case.

These exceptions are overruled.

The exceptions in the third group are as follows:

(1) "Because his Honor erred in refusing to allow the witness Keistler to answer the following question, on the ground that it was incompetent: 'If the premium had been offered you, would you have accepted it?'—the evidence being competent, relevant, and material on the issue as to whether or not it was necessary for the defendant company to make a tender of the return premium in order to stand upon its rights as fixed in the contract of insurance; it being claimed on the trial of the case that the company had waived its rights under the policy by a retention of the return premium, and the evidence of plaintiff showing that a tender had been attempted."

(3) "Because his Honor, the presiding Judge, erred in refusing to grant defendant's motion for a direction of a

verdict, on the ground that the clear and only inference that can be drawn from the testimony is that there was no waiver on the part of the company; the error being that there was a total failure of evidence of any expense or trouble to which the plaintiff was put by the defendant inconsistent with the idea that the amount of the insurance would not be paid, and that any inference of waiver on the part of the defendant which might have been drawn by its failure to tender the return premium was conclusively rebutted by the action of plaintiff's representative in failing to accept or refuse a proffered tender from a representative of defend- and who he knew had come a long distance for that purpose, in leaving said representative's presence without having indicated his preference, and by the fact that defendant admittedly denied liability and attempted to make a tender."

(7) "Because his Honor, the presiding Judge, erred in refusing to charge defendant's fifth request to charge, to wit: 'The Court charges you that there is no evidence of any waiver on the part of the defendant of its right to insist upon the terms of the policy, and that the retention of the premium by the defendant in this case would be no evidence of a waiver on its part to insist upon the terms of the policy'—the error being that it contains a sound proposition of law applicable to the case, and is not a charge on the facts."

What has already been said shows that these exceptions cannot be sustained.

Affirmed.

MR. JUSTICE WATTS concurs.

MR. JUSTICE FRASER: I concur in the result with the Chief Justice. I think there was evidence sufficient to carry the case to the jury.

The distinction between an accepted risk to be defeated by conditions set forth in the policy and an excepted risk is clear, and it is logical to hold that it takes a new contract to cover an excepted risk. By way of illustration: A. has a plantation on which there are 10 buildings. All are covered by a policy of insurance, but the policy provides that, in case A. shall store certain inflammable materials in any of the houses, then the insurance on that building shall instantly cease. That is an assumed risk, which will be void upon a condition subsequent. B. has a plantation upon which there are 10 buildings; 9 of them are covered by a policy of insurance. Building No. 10 is excluded from the policy. It is entirely logical to hold that it takes a new contract to include insurance on B.'s No. 10, but not on A.'s No. 10. I do not see the application of excluded insurance to this case. The appellant unquestionably accepted insurance on the property destroyed in this case. The insurance was to cease upon the condition subsequent, to wit, the falling of the house in which the property was stored. The avoidance of the policy on account of the happening of a condition subsequent may be waived, and it does not require a new contract.

In *Kingman v. Ins. Co.*, 54 S. C., 603, 32 S. E., 763, we find: "Waiver of a forfeiture does not rest upon a new contract upon consideration."

In *Norris v. Ins. Co.*, 57 S. C., 358; 35 S. E., 572, it was provided that the insurance would cease if foreclosure proceedings were commenced. Foreclosure proceedings were commenced, and then the fire occurred. The agent of the company knew that foreclosure proceedings had been commenced, and made no objection. The jury found for the insured, and a judgment on the verdict was sustained. There is no difference in principle. This case was reaffirmed in *Powell v. Ins. Co.*, 97 S. C., 375; 81 S. E., 654, where goods stored in one building were removed to another with the knowledge and without objection by

the agent.    Several authorities are cited in the Powell Case that need not be repeated here.

It seems to me that this case is an accepted risk, with a condition subsequent, that is subject to waiver, and not an excepted risk.

MR. JUSTICE COTHRAN (written as majority opinion, but becoming dissenting opinion by action of the Judges) : Action upon an insurance policy for $2,500 upon plaintiff's stock of goods contained in a one-story brick building at Great Falls, S. C.    The policy was issued December 21, 1921, insuring the plaintiff against "all direct loss or damage by fire."    The stock of goods was totally destroyed by fire on January 26, 1921.

The fire occurred under the following circumstances : On the day named above, during a heavy snow and sleet storm, seven inches of snow and sleet accumulated upon the roof of the store building.    About 8 :30 p. m. the roof collapsed from the weight of the snow and sleet.    Practically the entire wall on one side of the building gave way, precipitating the shelving and goods on that side out upon the ground.    A few minutes after the collapse of the roof the fire broke out and totally destroyed the building and stock of goods.

The insurance company denied liability under the policy for the damages resulting from the fire under the above circumstances, and defended under a provision in the policy which reads as follows :

"If a building or any material part thereof fall, except as a result of fire, all insurance by this policy on such building or its contents shall immediately cease."

The plaintiff countered with the contention that the company had waived, by its conduct after the fire, the immunity claimed by it under the foregoing provision.

It appears beyond controversy, from the evidence submitted upon the part of the plaintiff, that the fire originated after the collapse of the roof, which could not therefore

have occurred as a result of the fire. It is entirely imma-
terial to inquire whether the collapse of the roof caused the
fire or not; under the provision in the policy quoted above,
the collapse of the roof *eo instante* terminated the insurance
on the stock of goods; and if the fire originated after the
collapse whether as a result of it or not, the provision meets
a condition, a risk, not covered by the policy, and protects
the company from liability. See the authorities cited in the
argument of the appellant's attorney, which are clear and
full to the point. This, however, is not conclusive of the
rights of the insured, for the question of waiver by the com-
pany of the foregoing provision remains to be considered.
It is contended by the plaintiff that there was sufficient
testimony upon this issue to require its submission to the
jury.

The evidence of waiver claimed by the plaintiff consisted
of the following facts:

Quoting from the respondent's argument:

"The morning after the fire Mr. Mullican (the local agent
of the company) was sent for and was told of the caving in
of the roof and of all the circumstances of the fire. He
looked over the destroyed property, satisfied himself that
the loss was total, and told Mr. Keistler to go ahead; that
the company would settle; that it would be all right to go
ahead and clean up and get ready to rebuild. Mr. Keistler
acted upon the advice of Mr. Mullican. Mr. Mullican was
the regular agent of defendant. He made policies, signed
them, delivered them, and collected the premiums."

Again quoting from the same source, and referring to the
conduct of the adjuster of the company:

"About three weeks after the fire Mr. Wallace, the ad-
juster for the defendant company, called to see Mr. Keistler.
He said he had come to investigate the loss. He was shown
the premises and told how the fire occurred. He asked for
the policies and for a statement of assets. A statement was
furnished by the bookkeeper, who got it up from the books,

and the adjuster took the statement. This statement was gotten up and delivered to Mr. Wallace while Mr. Mullican was coming from the bank to Mr. Keistler's warehouse. After Mr. Wallace had secured the statement which included the purchases and sales up to the time of the fire he called attention to a certain clause in the policy which he said would probably interfere with collecting the insurance, and that he would have to have a nonwaiver. Mr. Wallace suggested that Mr. Mullican be sent for after nonwaiver had been mentioned. He wanted Mr. Keistler to talk over with Mr. Mullican the matter of signing nonwaiver. The statement was made up while Mr. Mullican was on the way. The signing of the nonwaiver was the last thing done. It took ten or fifteen minutes to make the statement. The nonwaiver was signed after Mr. Mullican came. He was one of the witnesses to it."

A further ground of waiver claimed by the plaintiff was the alleged failure of the company to tender a return of the premium, or a proportionate part of it, after the fire. Upon this point the plaintiff's representative testified that, four or five weeks after the visit of the adjuster referred to above, he came again to Great Falls and called him over the 'phone, and asked him to come to the bank; that he went to the bank, and that he and the adjuster went back into the directors' room; that the adjuster said he had been sent there to tender the unearned part of the premium, "but in a kind of smiling way, he said, 'I don't believe you are going to take it'"; that he did not tender the money, and that the witness did not tell him whether he would take it or not. Upon cross-examination of this witness he was asked by the defendant's counsel: "If the premium had been offered you you would not have accepted it?" Upon objection by plaintiff's counsel, as a hypothetical question, the answer was excluded. Error is assigned in this ruling.

At the close of all of the evidence the defendant moved for a directed verdict upon the grounds below stated, which,

4—S. C.—124

repeated in the exceptions, present the issues of law to be determined:

(1) That the fire did not occur until after the collapse of the roof, and that the quoted provision protected the company from liability under the policy.

(2) That the acts of waiver upon which the plaintiff relies occurred after the fire, and that, the contract of insurance having ceased and determined before the fire, such acts could not revive and make it a vital contract at the time of the fire.

(3) That the acts relied upon by the plaintiff as evidence of waiver do not in law amount to such evidence.

As to the first point:

This had been adverted to above, and as indicated, should be sustained unless there was sufficient evidence of a waiver of the provision in question to require a submission of that issue to the jury.

As to the second point:

The precise question involved is this: May an insurance policy which by its terms does not cover a particular loss be extended by the conduct of the insurer after the loss, upon the principal of waiver or estoppel, to cover such loss? It will be noted that the provision in the policy quoted above contains an express limitation of the insurer's liability, excluding it in case of loss by fire after the collapse of the building; at the time of the fire, therefore, which occurred after the collapse, there was no contract of insurance covering that loss. It is apparent, therefore, that, if the conduct of the insurer after the fire may upon the principal of waiver or estoppel be held to have fixed liability upon the insurer for this particular loss, it must be, not upon the principle of a waiver of a forfeiture, but by the creation of a contract liability which did not theretofore exist. In insurance cases a forfeiture of the insured's right to indemnity presupposes the existence at one time of that right; and a waiver by the insurer of its right to claim the forfeiture leaves the insured's

contract right to indemnity unimpaired and enforceable.   In
other words, every case of waiver presupposes a ground of
forfeiture, and every forfeiture presupposes an existing
contract right.   It seems clear, therefore, that there being
primarily no contract right, the insured cannot be waived
into an obligation which it did not assume in the contract,
but expressly and specifically declined to assume.   This
marks the distinction between the two classes of cases:   If
by the contract the insured assumed a stated risk primarily,
and provided for a forfeiture upon the happening of cer-
tain conditions, its right to claim such forfeiture may be
waived; but where it expressly and specifically declined to
assume such risk, it cannot by its conduct be held to have
waived itself into making a contract which had not been
entered into.

All of the many cases in this State in which the principle
of waiver has been applied may be explained by the recogni-
tion of this distinction.   They are, without exception, so far
as we have observed, cases of a primary assumption of the
stated risk, the forfeiture of which was claimed by the in-
surer, and a waiver of that forfeiture claimed by the insured.

"There can be no waiver where the insured by the act loses
his insurable interest, or where he never had an insurable
interest.   After the termination of the contract of insurance
there can be no waiver of any of the provisions thereof."
26 C. J., 279.

This Court has declared in the case of *McBryde v. Ins.
Co.,* 55 S. C., 589; 33 S. E., 729; 74 Am. St. Rep., 769:

"In that case [*Joye v. S. C. Mutual Ins. Co.*] the plaintiff
failed to pay the assessments ordered on the ———— day of
December, 1896, and on the 27th of January, 1897; she was
notified on the 27th of February, 1897, that her policy was
suspended for failure to pay the said assessments; the prop-
erty was destroyed by fire on the 13th of March, 1897, and
she did not forward the money to·pay the assessments until
after the fire.   The nineteenth By-Law was as follows:

'All assessments must be paid within thirty days after writ-
ten notice is mailed. If not paid, the policy shall be sus-
pended, and be liable to assessment until the policy is prop-
erly canceled. Suspended policies may be reinstated with-
out extra cost by the assured paying back assessment, pro-
vided the property be in the same condition as when sus-
pended.' In that case the active energy of the policy had
ceased to exist by the operation of law, in pursuance of the
express language of the contract, and the destruction of the
property by fire made it impossible for the plaintiff to be
reinstated to membership, in so far as that property was
concerned. All the testimony as to waiver related to facts
occurring after the property had been destroyed. Under
these circumstances there was no foundation upon which
waiver could be predicated."

In *McCoy v. Northwestern Ass'n,* 92 Wis., 577; 66 N.
W., 697; 47 L. R. A., 681, the certificate provided against
liability in case of death by suicide. It was held that it
could not be broadened out by the application of the law of
waiver or estoppel so as to cover a case of death by suicide
which was excluded from the certificate by its terms.

The Court said:

"What is insisted upon is not really the waiver of a for-
feiture, or an equitable estoppel against insisting upon a
condition of the policy, the violation of which would other-
wise work a forfeiture. It is a misuse of the term to so
speak of the loss of benefits under the certificate in question.
What is here sought is not to prevent a forfeiture, but to
make a new contract; to radically change the terms of the
certificate so as to cover death by suicide, when, by its terms
that is expressly excluded from the contract. We do not
understand that the doctrine of estoppel or waiver goes that
far. After a loss accrues an insurance company may, by
its conduct, waive a forfeiture; or by some act before such
loss it may induce the insured to do or not to do some act
contrary to the stipulations of the policy, and thereby be

estopped from setting up such violation as a forfeiture; but such conduct, though in conflict with the terms of the contract of insurance and with the knowledge of the insured, and relied upon by him, will not have the effect to broaden out such contract so as to cover additional objects of insurance or causes of loss. To illustrate the principle here laid down, a policy of insurance against loss by fire cannot have ingrafted upon or added to it, by way of estoppel or waiver, provisions for insurance against loss by any other cause; and no more can a policy of life insurance, expressly limited to payment of a sum of money in the event of death from causes other than suicide or self-destruction, be broadened out by the application of the law of waiver or estoppel so as to cover the cause excluded under the contract. While a forfeiture of benefits contracted for may be waived, the doctrine of waiver or estoppel cannot be successfully invoked to create a liability for benefits not contracted for at all."

In *Ruddock v. Ins. Co.,* 209 Mich., 638; 177 N. W., 242, it is said:

"The cases where the doctrine of waiver, or estoppel, has been applied have largely been cases where the insurance companies have relied on a forfeiture of the contract, upon breaches of the warranties and conditions to work such forfeitures; and in many such cases this Court and other Courts of last resort have held that if companies have led the other party, to his prejudice, to his expense, to understand that such forfeitures, such breaches of warranties and conditions would not be insisted upon, then the companies would be estopped from asserting such defenses. But here the defendant makes no claim of forfeiture of the contract; on the contrary it is insisting upon the contract itself, and insisting that by its terms it did not insure the deceased when engaged in military services in time of war. To apply the doctrine of estoppel and waiver here would make this contract of insurance cover a loss it never covered by its terms, to create a liability not created by the contract and

never assumed by the defendant under the terms of the policy. In other words, by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by the parties, to create a liability contrary to the express provisions of the contract the parties did make."

In *Wisecup v. Ins. Co.,* 186 Mo. App., 310; 172 S. W., 73, the policy provided that it should be void in case the insured was not the sole and unconditional owner of the property. The property at the date of the policy and at the time of the fire belonged to the wife of the insured. The insured sought to prove a waiver. The Court held:

"The question arises as to whether the husband had any insurable interest in this property of his wife. If he had not the policy of insurance is void as against public policy, and the question of waiver, by reason of the agent's knowledge of the title being in the wife, cuts no figure. The defendant company could not be held to a contract on the principle of waiver which it could not make in the first instance."

In *Lyford v. Ins. Co.,* 99 Me., 273; 58 Atl., 916, the insured had conveyed the property in violation of the terms of the policy. The Court held (quoting from the official syllabus):

"In such case all questions of breaches of conditions in the policy and all questions of waivers of such breaches after the destruction of the property, are immaterial, because the policy itself was terminated and no new contract was made to be a basis for such questions."

In *Draper v. Fire Ass'n,* 190 N. Y., 12; 82 N. E., 755, the policy provided that the insured should not be held liable for a loss resulting from an open fire built by the insured within fifty feet of the insured building. The fire resulted from such cause. The Court held that this provision was not a condition the breach of which would work a forfeiture, but that it was an exception from the risk as-

sumed by the company, and that the question of waiver could not therefore arise. The Court said:

"The provision cited from the policy in this case, however, is not a condition the breach of which works any forfeiture. It is simply an exception from the risk insured against. In other words, the policy does not cover a loss arising from any of the causes specified in the By-Law; but nevertheless it remains in full force and effect until the subject-matter of the insurance is destroyed. During the burning of this bonfire, had the plaintiffs' barn caught fire from any other cause, even from another bonfire more than fifty feet distant from the building, the plaintiffs would have been entitled to their insurance. *Matson v. Farm Buildings Ins. Co.,* 73 N. Y., 310; 29 Am. Rep., 149. To recover in this case it was, therefore, necessary for the plaintiffs to establish, not that the defendant waived the breach of a condition of the policy, but that in some way the obligation of the defendant was so extended as to include loss from a bonfire situated within fifty feet of the insured buildings. There is no pretense that any oral contract between the parties included such a loss; and hence there can be no right to a reformation of the policy."

The case at bar presents the same insuperable obstacle to the plaintiff's recovery. The provision in the policy did not contain the elements of a forfeiture, but created an excepted risk, and there could be no liability upon the insurer, after the fire had destroyed the goods, in the absence of a new contract upon a valuable consideration by which the company agreed to assume a loss against which it had not contracted, a possibility that is inconceivable.

As to the third point:

In view of our conclusion as to the second point, it becomes necessary to consider this.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to

that Court with instructions to direct a verdict for the defendant under rule 27 (90 S. E., xii).

F. H. WESTON, Acting Associate Justice, concurs.

JUSTICE COTHRAN (dissenting to opinion of majority): The opinion of the writer, which now appears as a dissenting opinion, was intended originally as the opinion of the Court, but, owing to the nonconcurrence therein of the Chief Justice and Justices Watts and Fraser, it has become a dissenting opinion, and the necessity arose for the preparation of a new opinion declaring the judgment of the majority of the Court. Accordingly the Chief Justice has prepared such an opinion. Some matters in that opinion appear to me to require attention, which I shall give in this as an addendum to my former opinion.

The leading opinion declares that the motion of the defendant for a directed verdict should not have been sustained, for the reason that the evidence was in such conflict upon two material issues in the case as to require submission to the jury. These issues are declared to be:

(1) At what time (that is, before or after the collapse of the roof) did the fire originate?

(2) What was the cause of the fire; was it caused by the collapse of the roof or by some other cause?

I concede that, if there was any evidence at all tending to show that the fire originated before the roof collapsed, the motion for a directed verdict was properly overruled. But, as I read the evidence, it not only presents nothing to show that the fire originated before the roof collapsed, but is overwhelmingly to the effect that it originated after.

Counsel for the plaintiff state in their preliminary statement of the facts:

"While the roof was caving in one of the clerks telephoned Mr. Keistler, who had gone to his home. The clerk used the telephone in the store. The center of the roof rested on the center of the floor. Then the fire broke out and destroyed the entire building and stock of goods."

There is not a line in their argument which contravenes or even suggests a doubt as to the theory that the collapse preceded the fire. This admission of counsel is thoroughly justified by the evidence.

Mr. Keistler, the manager of the company (plaintiff), was not in the store at the time of the collapse. He testified that he was at home; that two of his men were in the store at the time the roof fell; that one of them telephoned him (evidently, that the roof had collapsed, not that the store was on fire).

J. R. Goudelock, an employee of the plaintiff, testified:

That he was at work in the office when the roof collapsed. "The roof fell in, part of it, and a fire immediately afterwards destroyed our stock of goods." "It fell near the center. If kind o' came down and sheltered the whole stock and the fire immediately afterwards destroyed it." "Our wall was standing when the fire occurred." "The store did not catch fire until after the roof fell in." "The fire had not started when I 'phoned Mr. Keistler. That was the first thing I did. There was a little space of time between the falling in of the roof and the fire."

The presiding Judge charged the jury:

"There is no dispute over the fact that the top of the building collapsed and fell in just before the fire broke out," to which counsel for the plaintiff did not demur. So that by admissions of counsel for the plaintiff, by the evidence in the case, and by the charge of the presiding Judge it indisputably appears that the collapse of the roof preceded the fire. I cannot understand how, in the face of this showing, it can be declared that whether the fire occurred before or after the collapse was an issue to be submitted to the jury.

It is next declared in the leading opinion that—

"As the testimony in regard to the cause of the fire was conflicting, the issue raised by the pleadings was properly submitted to the jury."

I find absolutely no contradiction in the evidence as to the origin and cause of the fire. There is not a suggestion in the respondent's argument that it was caused in any other way than by the collapse of the roof. There is not a suggestion in the evidence to that effect. The witness Goudelock testified that there was fire in the stove before the roof fell in. Keistler testified that—

"The stove was about the middle of the store; stove pipe went up to a flue, which went from the girders up through the roof. The pipe and bricks composing the flue had all fallen in over the stove."

It does not appear that the storehouse had a ceiling to it; evidently the pipe from the stove led straight up to a brick flue resting on the girders; that when the collapse occurred the entire structure of pipe and brick flue fell over the stove, leaving nothing between the pipe opening in the stove, which had fire in it, and the encompassing debris of the fallen roof. In view of these facts there is no room for the conjecture that the fire may have been caused by defective electric wiring or from the flue.

The affirmance of the judgment appears to be placed upon the narrow ground that the defendant alleged that the stove was overturned and the evidence showed that it was not; that the defendant, having that as the cause of the fire, was obliged to prove it. In other words, if the evidence showed that the fire was caused by the tumbling down of the pipe and brick flue, exposing the debris to the fire in the stove, the defendant was not entitled to the inference of law consequent upon that condition, because it had failed to allege the exact particulars. I do not think that that position can be maintained. Besides it is a matter of absolutely no consequence how the fire was caused—whether by the collapse of the roof, the overturning of the stove, the fall of the pipe and flue, a defect in the flue or in the electric wiring— if it appears that the fire originated after the roof collapsed, as to which, as I have endeavored to show, there cannot be

a doubt. The clause in the contract, which was but the exercise of a contractual right of the parties, explicitly provides that:

"If a building or any material part thereof fall, except as a result of fire, all insurance by this policy on such building or the contents shall immediately cease."

If the fire was caused by the collapse of the roof, then necessarily the collapse preceded the fire, as cause precedes effect. It, therefore, occurred after the collapse, and brings the case squarely within the provision of the policy. If it was caused by some other agency, after the collapse, the provision in the policy clearly exonerates the defendant.

Of course, as I have already conceded, if it originated before the collapse, the provision will not apply. The unbroken line of authorities, so far as I have investigated, sustain this proposition: If the building, or any material part of it, should fall before any fire broke out and caused damage to the property insured, the insured would not be liable. *Nelson v. Ins. Co.,* 181 N. Y., 472; 74 N. E., 421. *Assurance Co. v. Mohlman,* 83 Fed., 811; 28 C. C. A., 157; 40 L. R. A., 561. *Ins. Co. v. Crunk,* 91 Tenn., 376; 23 S. W., 140; 4 Joyce, Ins., § 2583; 32 L. R. A. (N. S.), 604, note.

WESTON, Acting Associate Justice, concurs.