Leslie Percy **FOWLE**, individually and as representative of all those Underwriters at Lloyd's, London, England, insuring C. W. Martin, Johnny Joy, Douglas Joy and E. H. Joy, Jr., d/b/a Hemingway Raceway under Policy No. C.L. 12764, Plaintiff,

v.

C. W. (Pappy) **MARTIN**, Johnny Joy, Douglas Joy and E. H. Joy, Jr., d/b/a Hemingway Raceway, Kathryn G. Brayboy, individually, and as Administratrix of the Estate of Lawrence Brayboy, Lawrence Oral Brayboy, a minor by his Guardian ad Litem, Kathryn G. Brayboy, Bobby Jean Brayboy and James C. Evans, Defendants.

Civ. A. No. 8443.

United States District Court
D. South Carolina,
Florence Division.

Feb. 17, 1967.

Wright, Scott, Blackwell & Powers, Florence, S. C., for plaintiff.

James E. O'Shields, Hemingway, S. C., for Hemingway Raceway.

James P. Mozingo, III, D. Kenneth Baker, Thomas E. Smith, Jr., Darlington, S. C., and Cecil W. Schneider, Georgetown, S. C., for defendants Brayboy and Evans.

## ORDER

SIMONS, District Judge.

This action for declaratory judgment filed pursuant to the Federal Declaratory Judgment Act, 28 U.S.C.A. § 2201, seeks a construction of plaintiff's policy of automobile racing liability insurance issued to C. W. (Pappy) Martin, Johnny Joy, Douglas Joy and E. H. Joy, Jr., d/b/a Hemingway Raceway as insureds. The case was tried before me without a jury on November 29, 1966 in Florence, South Carolina. All parties were properly before the court and represented by counsel with the exception of defendant James C. Evans who was not represented by counsel and who did not file a responsive pleading to plaintiff's complaint, although he was called as a witness by plaintiff and testified at the trial.

In his complaint Leslie Percy Fowle of Lloyd's, England, alleges that he is an insurance underwriter and commenced this action individually and as underwriter and as representative of certain other underwriters at Lloyd's who had heretofore issued to defendants, C. W. (Pappy) Martin, Johnny Joy, Douglas Joy and E. H. Joy, Jr., d/b/a Hemingway Raceway, Lloyd's insurance policy # C.L. 12764. Jurisdiction of this court is founded upon diversity of citizenship, plaintiff and the underwriters at Lloyd's being citizens and residents of Great Britain in the United Kingdom, defendants being citizens and residents of South Carolina, and the amount in controversy exceeding $10,000 exclusive of interest and costs.

Plaintiff's complaint further alleges that on May 15, 1964 an accident occurred at the Hemingway Raceway wherein one Lawrence Brayboy was fatally injured when he was run into by one of the racing automobiles while he was in the "pit area" in the infield of the race track; that such collision came within exclusions in plaintiff's policy and that such did not afford liability coverage to the insureds for the accident; that plaintiff is informed and believes that as a result of the injuries and damages suffered by Lawrence Brayboy, resulting

in his subsequent death, defendant Kathryn G. Brayboy, as Administratrix of his estate, intends to file suits under the survivalship and wrongful death statutes of this State against defendants, C. W. (Pappy) Martin, Johnny Joy, Douglas Joy and E. H. Joy, Jr., d/b/a Hemingway Raceway; that such suits, if brought, would raise issues as to whether plaintiff afforded coverage to defendant insureds for such occurrence under said policy, and whether plaintiff is obligated to defend defendant insureds against such suits. Plaintiff asked declaratory judgment of this court determining that the policy in question did not extend coverage to the insureds for the accident in question, that plaintiff has no liability to pay any judgment recovered on account thereof, and has no obligation to defend on behalf of the insureds any action brought against them for damages resulting therefrom.

Insureds answered the complaint denying all material allegations thereof and asking that plaintiff's complaint be dismissed and that the court adjudge that plaintiff's insurance policy afforded full coverage to them in connection with the accident of May 15, 1964 and all damages resulting therefrom.

Defendants, Kathryn G. Brayboy individually and as Administratrix of the estate of her husband Lawrence Brayboy, Lawrence Oral Brayboy, a minor, and Bobby Jean Brayboy, in their answer, denied all of the material allegations of the complaint and further alleged that this court had no jurisdiction since insureds were residents of South Carolina, and should be realigned with plaintiff as parties thereby destroying diversity of citizenship between parties-plaintiff and defendants; they further alleged that no action or other justiciable controversy exists for consideration by this court since no suits have been commenced in any court as a result of the accident alleged in the complaint, and that plaintiff's complaint raises only moot questions which do not form a justifiable basis for this declaratory judgment action. These defendants also alleged that this action is brought for the sole benefit of plaintiff and his insureds, that these defendants have been forced to participate against their will, and that plaintiff should be required to pay their attorneys $5,000.00 as attorneys' fees, together with their attorneys' expenses in defending this action.

The issues for determination by the court are as follows:

1. Does the factual situation presented by the evidence give rise to an actionable or justiciable controversy over which this court should exercise its jurisdiction in this declaratory judgment action?

2. Does plaintiff's insurance policy afford insureds liability coverage, and is plaintiff required to defend any actions brought against insureds as a result of damages resulting from the accident of May 15, 1964?

 Since no suits for damages have been commenced in any court against plaintiff's insureds as a result of the accident, nor have any judgments been obtained against them, there is adequate room for doubt that an actual or justiciable controversy exists. If such does exist this court has definite convictions that the state court is the proper forum for this action because South Carolina law is controlling upon this court in this diversity action under Erie R. Co. v. Tompkins.[1] In the preliminary stages no motion was made to dismiss the action upon ground that no justiciable controversy exists, and the court has now heard the evidence, so it is now concluded that it has jurisdiction, that a justiciable issue does exist. The court will proceed to determine the issues raised by the evidence before it.

In accordance with Rule 52(a) of Federal Rules of Civil Procedure, the court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff and the underwriters at Lloyd's, London, England, whom he rep-

1. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

resents in this action are citizens and residents of Great Britain; all defendants are citizens and residents of the State of South Carolina; and the matter in controversy exclusive of interest and costs exceeds the sum of $10,000.

2. Heretofore on or about March 19, 1964 plaintiff and his underwriters, through their agent Charles A. Lenz and Associates, Inc., of St. Petersburg, Florida, issued to C. W. (Pappy) Martin, Johnny Joy, Douglas Joy and E. H. Joy, Jr., d/b/a Hemingway Raceway as insureds a policy of automobile racing liability insurance. Certificate No. C.L. 12764,[2] which became effective March 17, 1964 for a period of one year.

3. The relevant portions of subject policy of insurance, as amended by endorsement thereto, are as follows:

"A. To pay on behalf of the Assured, all sums which the Assured shall become legally obligated to pay as damage because of:

A (1) bodily injury, sickness or disease, including death at any time resulting therefrom sustained by any person, caused by accident, and arising out of the ownership, maintenance or use of the premises stated above, for the purpose of automobile racing events, including practice and time trials on reported race days.

A (2) injury to or destruction of property, including loss of use thereof, caused by accident, and arising out of the ownership, maintenance or use of the premises stated above, for the purpose of automobile racing events, including practice and time trials on reported race days.

"B. To defend in the name of and on behalf of the Assured any suit or other proceedings (whether groundless or not) brought against the Assured in connection with an accident arising out of the Assured's operations as covered by this insurance, but the Underwriters reserve the right to settle any such suit or proceedings as they may deem expedient.

"EXCLUSIONS AND DEFINITIONS

"This Policy excludes liability:

"1. to all participants, pit attendants, mechanics, stewards, and other officials and to all persons employed on or about the premises.

"3. to all persons whatsoever in the areas known as the *pit area before the racing programme is completed and before all racing automobiles are off the track.* (Emphasis added.)

"DEFINITIONS

"AUTOMOBILE:

"The word "Automobile" shall include "Stock Car," "Big Car" (Indianapolis Type), "Midget," "Sports Car," "Hot Rod," "Motor-cycle" and "Karts."

"RACING DAY:

"The words "Racing Day" shall mean each such date as reported by the Assured.

"PREMISES:

"The unqualified word "Premises" shall mean the premises designated on the face of the Certificate, including buildings and structures thereon and immediately adjoining parts of adjacent ways.

"PIT AREA:

"Area used to register the participants and prepare the automobile for racing events."

4. Defendant C. W. (Pappy) Martin leased a tract of land from defendants Johnny Joy, Douglas Joy and E. H. Joy, Jr., upon which he was operating an automobile raceway on a dirt track charging the public admission to view the same. The admission price for a bleacher seat on the outside perimeter of the track was 99 cents, and for admission into the infield area was $2.00 per person. Ev-

---

2. Plaintiff's Exhibit #1. The Certificate of Insurance was first filled in to show an effective date of April 8, 1964 to April 8, 1965 but was subsequently amended by handwriting interlineations to change the effective date from March 17, 1964 to March 17, 1965.

eryone who was admitted into the infield area, including race drivers, mechanics, and other racing helpers as well as spectators were required to purchase a $2.00 ticket.

5. Although the Joy Brothers were included as insureds in subject policy, their only connection with the race track was their ownership of the land. They were not partners with Martin in the raceway activities, nor did they have any connection with the operation of the races. Lawrence Brayboy and James C. Evans each paid a $2.00 admission charge and were permitted to drive their automobiles into the infield area where all of the racing automobiles were admitted prior to the races, and where the $2.00 spectators who had no connection with the races could also drive and park their automobiles. Brayboy and Evans were spectators only at the races; they were not participants, assistants, helpers, mechanics, or in anywise connected with the racing operation or any of the race cars.

6. The race track was dirt and oval in shape. The track itself and the apron adjoining the track were separated from the outside perimeter of the track and the infield by wooden posts some 2 to 3 feet in height. In the infield there had been erected light posts with lights thereon, a pagoda at the starting and finishing line, and directly behind it some 30 or 40 feet a refreshment stand. In the entire infield there was no particular roped off or designated area reserved for racing cars only; spectators parked their cars at will in the infield and quite frequently they were mingled with the racing cars. There was no roped or staked off area designated as the "pit area." [3] Neither were there any warning signs advising spectators to stay away from or not to visit any area at any particular time.

7. The alleged "pit area" portion of the infield was open and undesignated, with a dirt roadway down the middle where, as a matter of practice, the racing cars prior to the commencement of the races were parked on either side of the roadway. The roadway which ran between the two lines of racing cars was kept open at all times to all infield ticket holders, and was used by the racing cars in going to and from the race track, and by spectators in the infield without any restrictions whatever. Neither was there any evidence to indicate that this roadway was "used to register the participants and prepare the automobile for racing events." [4] Some of the racing cars were parked outside of the "pit area" and some of the spectators' cars were parked within such area. The roadway separating the two lines of cars in the "pit area" ran parallel to the race track itself and directly in front of the concession stand and was used at will by spectators to go to and from such stand. Plaintiff had spotters to check on all activities at the track. One Jack Donahue who represents Charles A. Lenz and Associates, Inc., from whom Martin purchased subject policy had visited the track, was familiar with Martin's operation, and also knew that he kept the road through the so-called "pit area" open for the use of all patrons, racing personnel and infield spectators alike. There is no

---

3. Attention is invited to the fact that plaintiff's Exhibit # 3, which is a free-hand ink drawing of the track, bleachers and infield area, shows a "pit area" within the infield which is separated from the concession stand, pagoda and the balance of the infield by a steel cable. The testimony of the witnesses and defendant's Exhibits A, B, C and D which are clear and close-up photographs of the race track, showing the infield and particularly the area claimed by plaintiff to be the "pit area," fully demonstrate that the alleged "pit area" is not separated in any manner from the remainder of the infield, and no steel cable around such area is shown in the photographs. It is upon such evidence that the court has determined that the "pit area" was not marked or staked off, or in any manner separated from the rest of the infield where spectators who paid $2.00 admission fee were given free access and use to all parts thereof.

4. A quote from policy definition of "pit area."

intimation in the record that plaintiff ever objected to Martin's permissive use of the entire infield area, including the so-called "pit area" by infield spectators.

8. On the night of May 15, 1964 Martin opened the gates of his track at 6:00 p. m. Participating racers were permitted to use the track for warm-up or unprogramed trial runs until 8:00 p. m., at which time all of the drivers were called to an assembly on the track, prior to commencement of the formal racing program. The scheduled time to begin the programed or prize races was set at 8:30 p. m. The accident in which Lawrence Brayboy was fatally injured occurred about 8:00 p. m. before the scheduled races were commenced and very shortly after Martin had called the drivers meeting. At this time there were present in the infield area about 150 drivers, mechanics and others connected with the racing activities, and approximately 250 spectators.

9. After Lawrence Brayboy and James C. Evans had purchased their tickets and had driven their automobiles into the main gate, across the race track, and into the infield they parked in the southern portion near the "pit area". They thereafter walked along the roadway which ran through the two rows of racing autombiles to the concession stand located approximately in the center of the infield area, adjacent to the so-called "pit area", and directly behind the pagoda. They purchased refreshments and were returning to their automobiles in the southern area of the infield walking back along the same roadway which they had used in going to the concession stand. As they were in front of the Goodson race car, although the driver was not inside the car at the time, its gears became engaged and it darted forward striking Brayboy with sufficient force to knock him into and against the racing car across the roadway, inflicting upon him very serious personal injuries from which he died several days later. He incurred considerable medical and hospital bills as a result of his injuries and at his death he left surviving his widow and his two children who were dependent upon him.

10. Lawrence Brayboy was injured upon the premises of the Hemingway Raceway through no fault of his own while he walking along a driveway in the infield where, according to custom and practice, he had a clear right to be at a time prior to the commencement of the formal racing program and while there were no racing cars on the track. At the time of his injury Lawrence Brayboy was not within any area designated by sign or otherwise as the "pit area". He was using a driveway or walkway which was maintained and kept open for the unrestricted use of all persons, including racing participants and spectators who had paid the higher admission price to be permitted in the infield area.

11. Defendant Martin endeavored to secure the signatures of all persons paying admission to enter the infield to sign a purported release, waiver, and indemnity agreement at the time they purchased their tickets, wherein they admitted that such signers were participants or otherwise connected with a racing vehicle, and that they thereby released and discharged the raceway operator from any and all liability for injuries and damages suffered by them on the premises. Such an instrument was offered in evidence by plaintiff covering Martin's race of May 15, 1964, which allegedly contained the signature of Lawrence Brayboy thereon. There was no proof establishing the fact that such signature was that of Mr. Brayboy and in fact his wife, the defendant Mrs. Kathryn G. Brayboy, testified that such purported signature was not that of her husband, it being noted that the spelling of his name was "Larance," rather than the correct spelling of "Lawrence." The purported signature was not that of Lawrence Brayboy, the husband and intestate of defendant Kathryn G. Brayboy, and such instrument has no relevancy to the issues of this case.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and of the subject matter of this action, the parties are properly aligned, and an actual justiciable controversy exists between plaintiff and defendants.

2. Defendants Johnny Joy, Douglas Joy and E. H. Joy, Jr., were not partners and had no interest or connection with the operation of the raceway. They were merely the owners of the real estate and lessors of the defendant C. W. (Pappy) Martin, who was the sole owner and operator of the race track. Defendants Joy have no legal liability or responsibility for any injuries or damages resulting from subject accident.

3. Neither deceased Lawrence Brayboy nor defendant James C. Evans were participants, pit attendants, mechanics, stewards or other officials connected in any manner with the operation of the raceway by defendant Martin. They were paying spectators only and liability coverage as to them was not excluded by Exclusion No. 1 of the policy of insurance hereinabove set forth.

4. Exclusion No. 3 hereinabove set forth did not apply to the accident in question and did not exclude liability coverage under the policy as to any injuries and damages suffered by Lawrence Brayboy and James C. Evans or the resulting death of Lawrence Brayboy for the reasons that: (a) They were not actually located within the "pit area" at the time of the accident, inasmuch as they were walking along the path or roadway in the infield area at a point where there was no restriction upon the use thereof by any paying spectators, nor were they within any roped off or fenced or other well defined area wherein spectators were warned not to be. Plaintiff and his underwriters were well aware of the layout and general use of the various portions of the infield of the track, including the driveway in question, inasmuch as their representatives had attended defendant Martin's racing events prior to that time and were fully advised of the practices followed by him in permitting his spectators to use such driveway at their pleasure. (b) Said Exclusion No. 3 applied only to persons in the "pit area before the racing programme is completed and before all racing automobiles are off the track." This exclusion is ambiguous and subject to more than one reasonable interpretation. Its phraseology forms the basis of a reasonable inference deducible therefrom that such exclusion would not apply to persons who were actually in the "pit area" prior to the commencement of the programed racing program, and while the racing automobiles were not on the track. Therefore, under such a construction of the exclusion, had Lawrence Brayboy and James C. Evans actually been within the limits of the "pit area" as defined in the policy at the time of the accident, the exclusion of liability as to the accident would not have been effective, inasmuch as the formal racing program had not yet begun and there were no racing automobiles on the track at that time. Since Exclusion No. 3 of the policy is ambiguous and susceptible of more than one reasonable interpretation, any interpretations must be given effect which favors the coverage of the policy. Under South Carolina law it is well settled that the burden rests upon the insurer to sustain and establish a defense of an excepted risk, and any doubt as to the meaning of a clause in an insurance policy should be resolved in behalf of the insured and in favor of the coverage of the policy. Foster v. Canal Ins. Co., 227 S.C. 322, 88 S.E.2d 59 (1955); Hawkins v. North Carolina Mut. Life Ins. Co., 170 S.C. 478, 170 S.E. 833 (1933); Keistler Co. v. Aetna Ins. Co., 124 S.C. 32, 117 S.E. 70 (1923); Heyward v. American Casualty Co. of Reading, Pa., 129 F.Supp. 4 (E.D.S.C. 1955).

5. Plaintiff's liability policy issued to defendant Martin covered his operation of the Hemingway Raceway on the occasion in question. Exclusions No. 1 and 3 of the policy above set forth verbatim did not apply to the facts and circumstances surrounding the accidental in-

**370**

jury and resulting death of Lawrence Brayboy and any injuries or damages, if any, suffered by defendant James C. Evans, while they were paying spectators at the Hemingway Raceway on May 15, 1964. Plaintiff's policy of insurance No. C.L. 12764 insured and extended liability coverage to defendant C. W. (Pappy) Martin to the limits of liability stated therein for all injuries and damages suffered on such occasion by James C. Evans and Lawrence Brayboy, and such damages as were suffered by Brayboy's estate and beneficiaries from his death. Plaintiff is obligated under the policy to pay any judgments obtained against defendant Martin by his co-defendants herein as a result of the accident which occurred at such time and place.

6. Under the terms of the policy plaintiff is obligated to defend defendant C. W. (Pappy) Martin in any action brought against him by any of his co-defendants as a result of such accident.

7. Plaintiff is not obligated to pay defendant's attorneys any fees or expenses incurred in connection with the defense of this action.

And it is so ordered.