Jack **SIEGEL** et al.

v.

**WILLIAM E. BOOKHULTZ & SONS, INC., et al., St. Paul Fire and Marine Insurance Co., Appellant.**

No. 22265.

United States Court of Appeals
District of Columbia Circuit.

Argued March 17, 1969.

Decided Aug. 28, 1969.

Mr. John L. Ridge, Jr., Washington, D. C., with whom Mr. Walter J. Murphy, Jr., Washington, D. C., was on the brief, for appellant, St. Paul Fire and Marine Ins. Co.

Mr. John J. Dempsey, Washington, D. C. (appointed by the District Court) for appellee, Harold Surrey Co., Inc.

Before BAZELON, Chief Judge, PRETTYMAN, Senior Circuit Judge, and ROBINSON, Circuit Judge.

**SPOTTSWOOD W. ROBINSON, III,**
Circuit Judge:

William E. Bookhultz & Sons, Inc. (Bookhultz), a plumbing contractor, and Crane Company (Crane), a wholesaler of plumbing materials, were sued jointly in the District Court for damages following Bookhultz' installation of plumbing, utilizing allegedly defective materials supplied by Crane, in an apartment house under construction. Crane, in turn, filed a third-party complaint against Harold Surrey Company, Inc. (Surrey Corporation), which had sold the materials to Crane, seeking indemnification on the theory of a breach of warranty.

Surrey Corporation was the successor to Harold Surrey Company (Surrey Company), a sole proprietorship.[1] Before the incorporated entity came into being, and prior to the events in suit, St. Paul Fire and Marine Insurance Company (St. Paul) had issued a policy of insurance to "Harold Surrey Company" as the insured, and had amended the policy by endorsement to provide coverage for products liability on the sale of plumbing materials. The policy remained otherwise unchanged at the time of the incorporation and at the time of Crane's purchase of the materials from Surrey Corporation. That transaction was concededly embraced within the coverage of the policy if it survived the incorporation and conferred its benefits upon the corporation.

Upon notification of the third-party action, St. Paul engaged counsel[2] who actively defended Surrey Corporation for approximately a year and a half.[3] No one seems to have entertained misgivings as to St. Paul's obligation under the policy to do so until St. Paul became conscious of the fact that the policy had never been formally endorsed to the corporation as the insured. St. Paul then took the position that it had no contract of insurance with the corporation, and its attorney obtained leave of the District Court to withdraw from the case.[4]

Since Surrey Corporation, as a corporation, could not continue *in propria persona*,[5] the court appointed new counsel to represent it, which it was financially unable to arrange on its own.[6] Appointed counsel promptly asserted the continuing efficacy in the corporation's favor of the policy stipulations protecting against products liability, and commenced a series of activities designed to obtain their enforcement.[7] The controversy matured when counsel filed what may be described as a fourth-party complaint against St. Paul seeking a declaratory judgment respecting its responsibility under the policy for expenses incurred in the litigation. The fourth-party action was severed from the main ac-

1. Surrey Company was operated as an unincorporated enterprise by Harold Surrey, its sole owner. Upon the incorporation of Surrey Corporation, Harold Surrey became its president and only stockholder, and business operations continued from the same location, apparently without change in character. Shortly after this case got under way in the District Court, Harold Surrey, in consequence of his adjudication as a bankrupt, relinquished his stock ownership and resigned his office in the corporation, which went out of business a few weeks thereafter.

2. Not its counsel on appeal. See note 8, *infra*.

3. As the District Court found, he prepared the corporation's answer to the third-party complaint, filed interrogatories to other parties, and twice successfully opposed certificates of readiness.

4. The circumstances surrounding the granting of leave to withdraw are hereinafter discussed. See the text paragraph accompanying note 29, *infra*.

5. Heiskell v. Mozie, 65 App.D.C. 255, 257, 82 F.2d 861, 863 (1936); Simbraw, Inc. v. United States, 367 F.2d 373 (3d Cir. 1966); Flora Constr. Co. v. Fireman's Fund Ins. Co., 307 F.2d 413, 414 (10th Cir. 1962), cert. denied 371 U.S. 950, 83 S.Ct. 505, 9 L.Ed.2d 499, rehearing denied, 373 U.S. 919, 83 S.Ct. 1296, 10 L.Ed.2d 419 (1963).

6. See note 1, *supra*.

7. These activities are subsequently summarized. See notes 30-31, *infra*, and accompanying text.

tion and advanced for prior trial by the court without a jury.[8]

The court concluded that St. Paul had received sufficient notice of the incorporation to extend the coverage of the policy to Surrey Corporation [9] and, moreover, that St. Paul was estopped by the representation it furnished the corporation to deny that the policy protected it; and these rulings are not contested on this appeal.[10] The court then awarded Surrey Corporation a judgment declaring, among other things, that St. Paul was liable "for *all* . . . costs of legal representation" in the proceedings since St. Paul's attorney withdrew,[11] and from this judgment St. Paul appeals.

## I

St. Paul does not complain of the judgment insofar as it adjudicates responsibility for the corporation's counsel fees in defending the suit brought by Crane.[12] It contends, instead, that the judgment is erroneous to the extent that it makes St. Paul financially answerable for legal services attributable to prosecution of the action respecting coverage and duty to defend. Pointing to the absence of a specific policy provision on the subject, St. Paul refers us to the proposition that fees of counsel for prevailing litigants are usually non-recoverable.

Such is the general rule,[13] but one subject to "[l]imited exceptions . . when overriding considerations of justice [seem] to compel such a result," [14] and this case, we think, falls within such an exception. Thus we have no occasion to select from the decided cases [15] a fixed rule to broadly govern ordinary breach-of-duty cases. For the same reason,

8. The attorney St. Paul had engaged to represent Surrey Corporation continued to represent St. Paul after the withdrawal. Between the filing and the trial of the fourth-party action, present counsel for St. Paul was substituted.

9. Harold Surrey deposed that he telephonically notified an agent of St. Paul that the business had been incorporated as Surrey Corporation. The agent disclaimed recollection of any such notice but admitted that it could have been given. The District Court found that the notice was given and held that it operated to confer coverage of the policy upon the corporation without observance of policy conditions requiring written notice of such changes and endorsement of the policy to accommodate them.

10. For this reason, we express no opinion on these subjects. See, however, National Union Fire Ins. Co. v. Aetna Cas. & Surety Co., 127 U.S.App.D.C. 364, 366–367, 384 F.2d 316, 318–319 (1967), and authorities cited therein at notes 10–12.

11. Emphasis supplied.

12. That responsibility is very clear. See the cases collected in Annot., 49 A.L.R. 2d 694, 727–731 (1956).

13. Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717–718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967); Oelrichs v. Spain, 82 U.S. (15 Wall.) 211, 231, 21 L.Ed. 43 (1872); Van Senden v. Wilkinson, 64 App.D.C. 174, 175, 76 F.2d 151, 152 (1935).

14. Fleischmann Distilling Corp. v. Maier Brewing Co., *supra* note 13, 386 U.S. at 718, 87 S.Ct. at 1407.

15. The courts have reached divergent results. Recognizing that counsel fees are awardable, on one basis or another, to the insured in proceedings to enforce the insurer's duty to defend are United States Cas. Co. v. Schlein, 338 F.2d 169, 175 (5th Cir. 1964); Security Ins. Co. v. White, 236 F.2d 215, 220 (10th Cir. 1956); Runyan v. Continental Cas. Co., 233 F.Supp. 214, 220 (D.Ore.1964); Utilities Constr. Corp. v. Peerless Ins. Co., 233 F.Supp. 64, 71 (D.Vt.1964). See also Standard Accident Ins. Co. v. Hull, 91 F.Supp. 65, 68 (S.D.Calif.1950); United States v. State Farm Mut. Auto Ins. Co., 245 F.Supp. 58, 59–60 (D.Ore. 1965); Ocean Accident & Guarantee Corp. v. Heald, 30 F.Supp. 991, 992 (E.D.Pa.1939). Holding, on the other hand, that counsel fees are not awardable are Fowle v. Martin, 264 F.Supp. 363, 370 (D.S.C.1967); Hazard v. Aetna Cas. & Surety Co., 253 F.Supp. 845, 847 (D.D.C.1966); Doyle v. Allstate Ins. Co., 1 N.Y.2d 439, 154 N.Y.S.2d 10, 136 N.E. 2d 484, 487 (1956); New Jersey Mfrs. Indem. Ins. Co. v. United States Cas. Co., 91 N.J.Super. 404, 220 A.2d 708, 711 (1966).

we need not inquire whether the questioned fees would normally qualify as costs "as between solicitor and client," [16] which St. Paul would dispute, or delve into the policy stipulations, as Surrey Corporation urges, to ascertain whether any may be construed to render such fees allowable.[17] Our starting point, rather, is St. Paul's express policy obligation to defend any suit for damages against the insured arising out of a risk insured against. That obligation, the District Court held, ran in favor of the corporation and was not fulfilled by St. Paul, and that holding is not under attack here.

It is well settled that an insurer's refusal to defend a claim within the coverage of a liability policy constitutes a breach of contract rendering the insurer liable to the insured for the losses resulting.[18] The damages recoverable therefor include not only the adjudicated or negotiated amount of the claim[19] and the insured's expenses in resisting it[20] but also any additional loss legally traceable to the breach.[21] Thus we reach the question whether counsel fees incurred in this branch of the litigation were assessable as a part of the damages flowing from St. Paul's nonperformance of its contract to defend Surrey Corporation against the demand asserted by Crane.[22] We treat that question in the light of the peculiar circumstances disclosed by the record before us, for whatever conclusion we might be inclined to reach in a situation presenting a bare breach of the contract to defend, we do not have so simple a situation here. What we do have, by our estimate, is a breach under conditions justifying the District Court in imposing upon St. Paul a responsibility for the full expense of the litigation between the corporation and it.

## II

Courts in some number have held that a party may recover the fees of his counsel where the conduct of his opponent has been oppressive,[23] and we ourselves have indicated as much.[24] In damage

16. See Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 165–169, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). Such costs are to be distinguished from costs "between party and party," Sprague v. Ticonic Nat'l Bank, *supra*, 307 U.S. at 165, 59 S.Ct. 777, which are regulated by statute. See D.C.Code § 15–701 (1967 ed.). See also Rosden v. Leuthold, 107 U.S.App.D.C. 89, 90–91, 274 F.2d 747, 748–749 (1960); Cahill v. Bryan, 87 U.S.App.D.C. 271, 273, 184 F.2d 277, 279 (1950).

17. Compare Moses-Ecco Co. v. Roscoe-Ajax Corp., 115 U.S.App.D.C. 366, 371, 320 F.2d 685, 690 (1963); City of Grandview v. Hudson, 377 F.2d 694, 697–698 (8th Cir. 1967).

18. See the cases collected in Annot., 49 A.L.R.2d 694, 711–717 (1956).

19. See the cases collected *id.* at 717–721.

20. See the cases collected *id.* at 721–737.

21. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Messenger, 181 Md. 295, 29 A.2d 653, 656 (1943); Miholevich v. Mid-West Mut. Auto Ins. Co., 261 Mich. 495, 246 N.W. 202, 203–204, 86 A.L.R. 633 (1933). Compare Moses-Ecco Co. v. Roscoe-Ajax Corp., *supra* note 17, 115 U.S.App.D.C. at 371, 320 F.2d at 690.

22. Compare Vaughan v. Atkinson, 369 U.S. 527, 530, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Freed v. Travelers, 300 F.2d 395, 399 (7th Cir. 1962).

23. Vaughan v. Atkinson, *supra* note 22, 369 U.S. at 530–531, 82 S.Ct. 997; Universal Oil Prods. Co. v. Root Ref. Co., 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946); Local 149, UAW v. American Brake Shoe Co., 298 F.2d 212, 214–215 (4th Cir. 1962); Cleveland v. Second Nat'l Bank & Trust Co., 149 F.2d 466, 469 (6th Cir.), cert. denied 326 U.S. 775, 66 S.Ct. 231, 90 L.Ed. 468 (1945); In re Swartz, 130 F.2d 229, 230 (7th Cir. 1942); In re Swofford, 112 F.Supp. 893 (D.Minn.1952); Kenny v. United States, 118 F.Supp. 907, 910 (D.N.J.1954); Gazan v. Vadsco Sales Corp., 6 F.Supp. 568 (E.D.N.Y.1934); Sakezzie v. Utah State Indian Affairs Comm., 215 F.Supp. 12, 21–24 (D.Utah 1963).

24. Wolf v. Cohen, 126 U.S.App.D.C. 423, 426, 379 F.2d 477, 480 (1967). And, in a related area, we have held that in more flagrant circumstances counsel fees may be awarded as elements of punitive damages, even for breach of contract. Brown v. Coates, 102 U.S.App.D.C. 300, 303–305, 253 F.2d 36, 39–41, 67 A.L.R.2d 943 (1958). See also Schlein v. Smith, 82

suits the rationale recently espoused by the Supreme Court is that the fees constitute an item of compensatory damages.[25] We think the chain of circumstances giving rise to the present controversy was such as to bring the case within the ambit of that line of authority.

After unqualifiedly taking over and for many months maintaining the defense of Surrey Corporation, St. Paul's attorney discontinued his services. That was done on St. Paul's instructions effectuating its position that the policy did not burden it with the defense. That position, we reiterate, stemmed from the fact that the policy had been issued to the unincorporated Surrey Company, and by St. Paul's reckoning did not insure the corporation that succeeded it.

The reasonableness of St. Paul's stand —a relevant consideration, since unreasonableness breeds oppression—is at once suspect. The record contains no suggestion that St. Paul investigated more than the designation of the insured in the insurance contract, or that it ever consulted Surrey Corporation on this aspect of the matter. Had it done either, it very probably would have gained information that Harold Surrey claimed that he gave notice of the incorporation to one of St. Paul's agents—a claim which St. Paul was unable to refute at the trial.[26] To this may be added the significance, in terms of duties imposed by the policy, of St. Paul's assumption of the corporation's defense. At no time did St. Paul seek a full-fledged judicial

determination [27] as to whether the facts bore out its legal view, a view the District Court was later to reject as doubly erroneous.[28]

Nonetheless, it was St. Paul's resolve to terminate the defense, and its attorney moved the District Court for leave to withdraw. Leave was granted, but certainly not under conditions warranting the thought that the court could have fully appraised the problem. The substance of the motion lay in its flat allegation that St. Paul "at no time covered the third-party defendant corporation with an insurance policy that would entitle them to a defense of the suit, . . ." While technically an accurate statement of St. Paul's thesis, this allegation hardly said enough to reveal its questionability. There was no debate before the court; indeed, the motion was unopposed, for a reason not difficult to discern from the record. Service of the motion on the corporation was attempted by mailing a copy to Harold Surrey who, in a deposition filed in the action some six months previously, had stated that he no longer held office or stock in the corporation. The further fact is that by this time Surrey Corporation was defunct and unable to do anything for itself.[29]

Court-appointed counsel for Surrey Corporation, promptly after appointment, moved for reconsideration of the order allowing withdrawal, an effort St. Paul opposed. Its opposition, and much more to follow, came forth despite the inclusion in the motion papers of Harold Surrey's claim that he had orally in-

U.S.App.D.C. 42, 45, 160 F.2d 22, 25 (1947); Ballard v. Spruill, 64 App.D.C. 60, 62, 74 F.2d 464, 466 (1934).

25. Vaughan v. Atkinson, *supra* note 22, 369 U.S. at 530–531, 82 S.Ct. 997. See also Fleischmann Distilling Corp. v. Maier Brewing Co., *supra* note 13, 386 U.S. at 718, 87 S.Ct. 1404.

26. See note 9, *supra.*

27. It was, of course, open to St. Paul to move for a declaration as to rights and liabilities under the policy, as insurance carriers commonly do and just as Surrey

Corporation was later compelled to do. But surely the motion of St. Paul's counsel for leave to withdraw—an unopposed, nonevidentiary proceeding—was not an equivalent. See the text paragraph accompanying note 29, *infra.* It was perhaps for this reason that the District Court itself rejected St. Paul's argument, at a later stage of the case, that the decision on the motion foreclosed a plenary judicial inquiry into the matter.

28. See the text *supra* at notes 9–10.

29. See note 1, *supra.*

formed St. Paul's agent of the incorporation. The motion was unsuccessful [30] but, after the filing of the fourth-party complaint, there were further proceedings throughout which St. Paul fought the corporation every step of the way.[31] It was only when the litigation reached this court that St. Paul chose not to insist that it never had a duty to defend.

In the wake of the withdrawal, the consequences of abandoning the defense —always potentially a hazard to the insured—reached unusual severity in this case. As trial of the main action neared, Surrey Corporation was left without a lawyer, and as a corporation it could not defend without one.[32] Its inability to secure an attorney on its own is evident from the fact—then already of record— that at the time of the withdrawal the corporation had long since gone out of business.[33] Only by grace of the court's appointment of counsel was the corporation able to sue to regain the protection of the policy, and only because it was compelled to sue did the expense arise of which St. Paul now complains. We are hard put to envision a situation in which an insurer's breach of its obligation to defend left its insured in a more hapless predicament.

█ We do not, of course, imply that insurers cannot properly undertake to exonerate themselves from unassumed risks without accountability for the insured's costs of representation in the process. But we do not shut our eyes to the consideration that in duty-to-defend cases, as in other fields of the law,[34] even legitimate ends may be corrupted by the methods employed to achieve them. Much less can courts ignore the insured's expense of litigation in an area where the insurer, however honestly motivated,[35] acts at its peril in disregarding the insured's claim to a defense.[36] In this case, we confront an insurer's faulty decision, based on dubious investigation,[37] to quit the defense; a steadfast determination, fully implemented, to abide that decision;[38] and an abandonment of an obviously helpless insured to whatever might come. We confront, too, the fee which the insured must pay, or its attorney must forego, for all of the time and energy expended to establish the error of the insurer's ways.

We perceive no policy, legislative or judicial, to be served by immunizing St. Paul from payment of Surrey Corporation's expense of vindicating its right to a defense.[39] Unjustified refusals to defend impecunious insureds threaten irreversible dishonor of liability on insuring agreements, and we are not insensitive to the need for curtailing their unwholesome capabilities.[40] We hold that, in the circumstances here, a fee for appointed counsel's successful effort to secure for Surrey Coporation the coverage of the policy and the protection it

30. An effort to appeal pursuant to 28 U.S.C. § 1292(b) (1964) also failed.

31. Aside from considerable skirmishing, the proceedings included St. Paul's alternative motion to dismiss the fourth-party complaint or for summary judgment, Surrey Corporation's subsequent motion for summary judgment on the issue of liability alone, and, of course, the trial itself.

32. See the cases cited *supra* note 5.

33. See note 1, *supra*.

34. A conspicuous example is the use of high-pressure methods to collect a valid debt. See W. Prosser, Torts § 11 at 49–50 (1964) and cases collected.

35. *See, e. g.*, Comunale v. Traders & Gen. Ins. Co., 50 Cal.2d 654, 328 P.2d 198, 202, 68 A.L.R.2d 883 (1958).

36. *Id.;* Fontenot v. State Farm Mut. Ins. Co., 119 So.2d 588, 595 (La.App.1960).

37. Vaughan v. Atkinson, *supra* note 22, 369 U.S. at 530–531, 82 S.Ct. 997.

38. *Id.* Compare Bell v. School Bd. of Powhatan County, 321 F.2d 494, 500 (4th Cir. 1963); Rolax v. Atlantic Coast Line R.R. Co., 186 F.2d 473, 481 (4th Cir. 1951); Hill v. Franklin County Bd. of Education, 390 F.2d 583, 585 (6th Cir. 1968).

39. Compare Fleischmann Distilling Corp. v. Maier Brewing Co., *supra* note 13, 386 U.S. at 717–718, 719–720, 87 S.Ct. 1404.

40. Compare General Motors Corp. v. Cadillac Marine & Boat Co., 226 F.Supp. 716, 744 (W.D.Mich.1964); In re Swofford, *supra* note 23, 112 F.Supp. at 897.

promised was within the sphere of damages awardable for St. Paul's breach of contract.

The judgment of the District Court is accordingly

Affirmed.

PRETTYMAN, Senior Circuit Judge, concurs in the judgment.