MOVE ORGANIZATION

v.

UNITED STATES DEPARTMENT OF
JUSTICE, et al.

Civ. A. No. 82–143.

United States District Court,
E.D. Pennsylvania.

Jan. 10, 1983.

Ramona Africa, The Move Organization, Philadelphia, Pa., for plaintiff.

Ramona Africa, The Move Organization, Philadelphia, Pa., for plaintiff.

## MEMORANDUM

GILES, District Judge.

Plaintiff filed a complaint suing a host of correctional authorities [1] for a litany of alleged afflictions.[2] The complaint was fol-

---

1. The defendants, named only in the caption, are: the United States Bureau of Prisons, Penitentiary at Lewisburg, and Post Office; the Commonwealth of Pennsylvania and its governor, attorney general, corrections commissioner, justice department, corrections bureau, parole board, and public welfare department; Philadelphia and its mayor, district attorney, and prison superintendent; Holmesburg Prison and Chester County Prison.

A "Supplemental to Original Complaint" [hereinafter cited as "Supplemental Complaint"] names in its caption a new defendant, the United States Department of the Treasury.

2. The entire original complaint reads:

The MOVE Org. is suing the above-named agencies for the ten year homicidal policy these agencies have collectively directed at the MOVE ORG., we are suing the above mentioned for legal slander, statutory slander, authorized slander: legal conspiracy, statutory conspiracy, authorized conspiracy: legal organizational persecution, statutory organizational persecution, authorized organizational persecution; legal interference with United States mail, statutory interference with United States mail, authorized interference with United States mail: legal religious persecution, statutory religious persecution, authorized religious persecution: legal prejudice, statutory prejudice, authorized prejudice: legal intimidation, statutory intimida-

lowed by a Supplemental Complaint detailing approximately nineteen separate grievances.[3] Despite the greater detail provided by the Supplemental Complaint, this action must be dismissed for a variety of jurisdictional, substantive, and procedural reasons.

## I. JURISDICTIONAL DEFECTS

The jurisdictional problems presented by the complaints can be divided into three categories: sovereign immunity, eleventh amendment immunity, and standing. I use the term "sovereign immunity" to describe the general inability to sue the United States. Eleventh Amendment immunity relates to the ability to bring in a state or its agencies as defendants. Standing relates to the ability of this plaintiff, the "Move Organization," to sue any party for the grievances listed in its complaint.

### A. *Sovereign Immunity*

█ The United States and its agencies may not be sued without consent. The complaint discloses no basis for consent, nor can I conceive of any.[4] Thus, the federal defendants—the Bureau of Prisons, the Lewisburg Penitentiary, the Post Office, and the Treasury Department—must be dismissed for lack of subject-matter jurisdiction.

### B. *Eleventh-Amendment Immunity*

█ The Eleventh Amendment has been interpreted to bar federal court suits against states for retroactive damages. Pennsylvania and its agencies have not con-

sented to this suit, and no other exception to eleventh amendment immunity applies. Therefore, the damage claims against the state and its alter egos, the Commonwealth of Pennsylvania, and its justice department, corrections bureau, parole board, and public welfare department, as well as the governor, attorney general and corrections commissioner in their official capacities, must be dismissed.

### C. *Standing*

As part of the constitutional case-or-controversy requirement, *see* U.S. Const. art. III, § 2, a plaintiff must have standing to sue. *See, e.g., Kirby v. United States,* 675 F.2d 60, 64 (3d Cir.1982). *See generally, e.g.,* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3531 (1975 & Supps. 1980 and 1982). The only plaintiff in this action is the "Move Organization." When an organization sues, its standing can be either "individual" or "representative." *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982). In its individual capacity, an organization sues for harm to itself. In its representative capacity, the organization sues on behalf of its members. *See, e.g., Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2440–2441, 53 L.Ed.2d 383 (1977); *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975).

---

tion, authorized intimidation: legal kidnap and incarceration, statutory kidnap and incarceration, authorized kidnap and incarceration: legal brutality, statutory brutality, authorized brutality: legal murder, legal attempted murder, authorized murder, authorized attempted murder: legal attempted extermination, statutory attempted extermination, authorized attempted extermination.

Each defendant named in this law suit is at all times pertinent to this cause of action.
WHEREFORE, plaintiff request the following:
1. Expedited docket treatment to bring this case to trial at the earliest possible time.
2. Compensatory damages in the amount of twenty-five hundred million dollars from

the city of Phila., and ten-hundred million from the federal government.
Complaint at 1–2 [sic].

**3.** The Supplemental Complaint apparently responds to Magistrate Naythons' report and recommendation that the original complaint be dismissed for, *inter alia,* lack of specificity.

**4.** Indeed, the original complaint disclosed no basis for jurisdiction for suit against any defendant. Magistrate Naythons therefore recommended dismissal for, *inter alia,* lack of jurisdiction. Plaintiff endeavored to cure this problem by pleading in the Supplemental Complaint jurisdiction based on 42 U.S.C. §§ 1981, 1983, and 1985. None of these sections allows suit against federal agencies.

■ On its own behalf, an organization, like an individual, must allege an injury in fact and show a personal stake in the case sufficient to warrant federal-court jurisdiction. *See, e.g., Havens Realty Corp.,* 102 S.Ct. at 1124; *Kirby,* 675 F.2d at 64. The complaint and supplemental complaint list incidents occurring over a five-year period. Each incident alleges some sort of brutality or judicial injustice to individual Move members.[5] In general, however, a fair reading of the complaints discloses no allegation of distinct harm to Move itself.[6] The exception is the alleged unconstitutional destruction of the Move house at the hands of the City of Philadelphia. *See* Supplemental Complaint ¶¶ 9–10. However, because this incident is already the subject of pending litigation before me by Move and many of its members, I shall dismiss this aspect of the instant case as duplicative. *See* notes 8, 11, 14 and 16 *infra* and accompanying texts. As to all other aspects of the complaint, Move lacks individual standing.

The question remains whether Move has standing as a representative of its members. One requirement for representational standing is that "neither the claim asserted nor relief requested requires the participation of individual members in the lawsuit." [7] With the exception of the incidents preceding and including the destruction of the Move house, which have been dismissed from this case as duplicative,[8] the complaints relate incidents where one or several Move members suffered harm. There is no statute, ordinance or other official action affecting all members.[9] It would require individual testimony to establish the constitutional violations set forth in the complaint, and the relief would have to be tailored individually to the harm suffered by any Move member whose rights may have been violated. *See, e.g.,* Comment, *supra,* note 7, at 132. Thus, both the claims asserted and relief requested require participation in this lawsuit by individual members.[10] Since this prerequisite to associational standing is not satisfied, so this court lacks subject matter jurisdiction.

## II. SUBSTANTIVE DEFECTS

■ Even assuming jurisdiction existed to hear this lawsuit, it would have to be dismissed as frivolous under 28 U.S.C.

**5.** I assume, for purposes of this opinion only, that each person surnamed "Africa" is a Move member. I do not decide whether Move meets the legal prerequisites to be an organization or unincorporated association. *See, e.g.,* Fed.R. Civ.P. 17; *cf. Africa v. Pennsylvania,* 662 F.2d 1025 (3d Cir.1981), *cert. denied,* 456 U.S. 908, 102 S.Ct. 1756, 72 L.Ed.2d 165 (1982) (Move is not a religion).

**6.** The complaints, particularly the Supplemental Complaint, are described in part II, *infra. Contrast* Supplemental Complaint (allegations of harm to individual members), *with, e.g., Havens Realty Corp.,* 102 S.Ct. at 1124 (allegations of injury to HOME organization); *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 261–62, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977) (harm to developer from racially discriminatory zoning); *Hudson Valley Freedom Theater, Inc. v. Heimbach,* 671 F.2d 702, 703–06 (2d Cir.1982) (corporations funding denied and delayed due to racial discrimination).

**7.** *Harris v. McRae,* 448 U.S. 297, 321, 100 S.Ct. 2671, 2690, 65 L.Ed.2d 784 (1980); *Washington State Apple Advertising Comm'n,* 432 U.S. at 343, 97 S.Ct. at 2441. Other requirements are that members would have individual standing, and that the interests the organization seeks to protect are germane to its purposes. *Id. See also* Comment, *Associational Third-Party Standing and Federal Jurisdiction under Hunt,* 64 Iowa L.Rev. 121 (1978). The latter requirements seem to be satisfied in this case.

**8.** Move and its members already are engaged in lawsuits on all aspects of these matters. *See* note 15, *infra,* and accompanying text.

**9.** *Cf., e.g., Washington State Apple Advertising Comm'n,* 432 U.S. at 335, 343, 97 S.Ct. at 2437–2441 (statute forbidding use of Washington apple grades); *Church of Scientology v. Cazares,* 638 F.2d 1272, 1280 (5th Cir.1981) (official conduct directed at church "uniformly affected the entire membership").

**10.** Furthermore, if the purpose of the individual participation test is to insure adequacy of representation, *see* Comment, *supra,* note 7, at 132, *cf.* Fed.R.Civ.P. 23 (adequate-representation prerequisite to class-action certification), a court should be even more careful when, as here, there is no indication that the person filing the suit is an officer of the organization or authorized to file suit in its behalf.

§ 1915(d) because the complaint does not entitle plaintiff to relief. This conclusion is most easily demonstrated by considering, in order, each substantive paragraph of the amended complaint.

Paragraph two alleges that a child of a Move member was "trampled to death by cop Palermo and other maniac cops;" various Move members were brutalized by police, and no policeman charged with murder, all on March 28, 1976. Assuming all this to be true, the complaint states no cause of action against any named defendant. *See* note 1 *supra* (list of defendants). Furthermore, no citizen has a right to have murder charges brought. Finally, the incidents are beyond the period of the statute of limitations.[11]

Paragraph three alleges that another baby died as the result of a beating of its mother outside a Philadelphia courtroom by Philadelphia sheriffs. This likewise fails to state a cause of action against any named defendant and is barred by time limitations.

Paragraph four alleges that various female Move members miscarried due to beatings "by Phila. cops and sheriffs in the past ten years." This fails to state a claim against a named defendant. In addition, it is not specific enough to allow the court or named defendants to identify when plaintiff's rights allegedly were violated. *See, e.g., Rotolo v. Borough of Charleroi,* 532 F.2d 920, 923 (3d Cir.1976) (plaintiff must plead "when, where, and how" its rights were violated).[12]

Paragraph five complains about warrants "on Move people" issued by Philadelphia

Common Pleas Judge Lynne M. Abraham in May, 1977. Judge Abraham is not a defendant. If she were, she would be protected by absolute judicial immunity as well as the statute of limitations.[13]

Paragraph six complains that ex-mayor Frank Rizzo, the water commissioner, the former city solicitor, Judge DiBona, the Postmaster General, Bell Telephone, and "the whole Phila. administration conspired to legally murder off this family" when the Move house was blockaded under court order. This is frivolous for many reasons. First, the allegations of conspiracy are not sufficiently specific. Second, most of the alleged responsible parties are not defendants. Third, the blockade terminated on August 8, 1978, *see, e.g., Move Organization v. City of Philadelphia,* 530 F.Supp. at 766, so the statute of limitations bars any action. Fourth, the pleading that these actions were "legal" seems to rule out the possibility that they were illegal and thus actionable. Furthermore, Move and its members are already engaged in a lawsuit over the entire range of events surrounding the Move blockade and shootout.[14]

Paragraph seven complains about "blanket warrants on all Move members" issued by Judge DiBona on August 2, 1978. This paragraph fails as a claim for the same reasons as paragraph five of the complaint. *See* text accompanying note 13, *supra.*

Paragraph eight alleges that as a "direct result of these blanket warrants," two Move members living in Richmond, Virginia, were arrested and jailed "for absolutely no reason at all" in the month preceding

---

**11.** The limitations period is two years. *See, e.g., Move Org'n v. City of Philadelphia,* 530 F.Supp. 764, 766 (E.D.Pa.1982). (Although plaintiff sues under 42 U.S.C. § 1981, there is patently no contract claim here). The initial papers in this case were filed on January 12, 1982. *See id.* (filing in forma pauperis petition commences action). Thus, the earliest actionable event that would not be barred by limitations is January 12, 1980.

I note that when making a § 1915 frivolity determination, it is especially appropriate for the trial judge to consider the statute of limitations when it is apparent that defendants would raise that defense. The limitation defense was raised against this plaintiff by these defendants

in *Move Org'n v. City of Philadelphia,* 530 F.Supp. 764 (E.D.Pa.1982).

**12.** Magistrate Naythons' report quoted this part of *Rotolo* to plaintiff before the Supplemental Complaint was filed.

**13.** *See* note 11 *supra* and accompanying text.

**14.** *See Move Org'n v. City of Philadelphia,* 530 F.Supp. 764 (E.D.Pa.1982); No. 80–3129 (E.D.Pa. Oct. 28, 1980). I have already dismissed one action as duplicative. 530 F.Supp. at 766. I see no reason to let a triplicate action be docketed.

their scheduled trial.[15] In addition to its internal contradictions, this paragraph does not plead a claim to the extent that it refers to warranted arrests for purposes of a criminal trial which resulted in conviction. To the extent it complains about events surrounding the arrests in Richmond, it is not addressed to any named defendant. In any event, it is barred by limitations. *See* note 11 *supra.*

Paragraphs nine and ten relate to the Move shootout and destruction of the Move house. These paragraphs must be dismissed for the reasons given in the discussion of paragraph six. *See* note 14 and accompanying text, *supra.*

Paragraph eleven complains about an evidentiary ruling in a criminal trial. If the ruling resulted in a conviction, the conviction must first be overturned in state court before it can be raised in federal court. If there was no conviction, the ruling was harmless and cannot be the basis of a claim. Furthermore, in failing to say when this incident occurred, the claim is not sufficiently specific.

Paragraph twelve complains that children of Move members were taken to a childcare center while their parents were jailed. The children allegedly were given processed food and dressed in diapers, to which they were unaccustomed. None of this alleges a constitutional violation. Furthermore, the complaint fails to state when this happened. Thus this paragraph is not sufficiently specific.[16]

Paragraph thirteen states that police officers who beat a Move member were not charged with murder. As with paragraph two, *see* text preceding note 11 *supra,* failure to bring charges cannot state a claim. I note that these officers were tried for aggravated assault. *See Commonwealth v. Geist,* 5 Phila. 210 (Pa.C.P.1981).

Paragraph fourteen complains of the acquittal of those officers by Judge Kubacki. This fails to state a claim.

Paragraph fifteen complains that the trial of certain Move members resulted in conviction for murder. Collateral estoppel bars challenging the essential facts surrounding this conviction.

Paragraph sixteen states that Philadelphia District Attorney Rendell "is a definite element" of a conspiracy against Move. Adding the word "definite" to "conspiracy" does not make the complaint specific. The only factual allegation in the paragraph is that Mr. Rendell is "not acting on our appeals." This statement is meaningless since a court, not a party, acts on appeals.

Paragraph seventeen complains about an interstate conspiracy among the Philadelphia District Attorney, a trial judge issuing an arrest warrant, and the governors of Pennsylvania and New York, to have a Move member arrested in New York. This act was within the official immunity of each alleged conspirator.

Paragraph eighteen alleges that various prison officials sanctioned "the sadistic beating" of Move members in local prisons. The allusions to the alleged beatings, however, are too vague to tell when and where they occurred and who actually did the

**15.** This trial is evidentially described in *Commonwealth v. Africa,* 281 Pa.Super.Ct. 419, 422 A.2d 539 (1980). It is often difficult to tell which proceedings are referred to because many of the reported cases in which Move members are defendants are entitled, "*Commonwealth v. Africa,*" *e.g.,* 496 Pa. 640, 437 A.2d 1223 (1981); 496 Pa. 638, 437 A.2d 1222 (1981); 496 Pa. 519, 437 A.2d 1161 (1981); 496 Pa. 517, 437 A.2d 1160 (1981); 496 Pa. 404, 437 A.2d 935 (1981); 496 Pa. 395, 437 A.2d 931 (Pa.1981); 474 Pa. 504, 378 A.2d 1228 (1977); 466 Pa. 603, 353 A.2d 855 (1976); 287 Pa.Super. 578, 428 A.2d 245 (1980); 281 Pa.Super. 540, 422 A.2d 601 (1980); 281 Pa.Super. 538, 422 A.2d 600 (1980 (case 1)); 281 Pa.Super. 539, 422 A.2d 600 (1980 (case 2)) (1980); *see also, e.g., Commonwealth v. Ford,* 292 Pa.Super. 479, 433 A.2d 102, *cert. denied,* 454 U.S. 1088, 102 S.Ct. 650, 70 L.Ed.2d 625 (1981); *Commonwealth v. Phillips,* 290 Pa.Super. 629, 429 A.2d 754 (1980); *Commonwealth v. Davis,* 289 Pa.Super. 626, 429 A.2d 102 (1980); *Commonwealth v. Sanders,* 260 Pa.Super.Ct. 321, 394 A.2d 572 (1978).

**16.** Based on the complaints in Civil Action Nos. 80–3129 and 80–3133, this incident occurred soon after the August, 1978, shootout, so it may well be barred by the statute of limitations.

beating. Thus, this paragraph is not specific enough to state a claim. *See* text accompanying note 12 *supra.*

Paragraph nineteen apparently complains that prison officials took blood samples from Move members for disease-prevention or other health purposes. This action is within the permissible discretion of prison authorities for the health and safety of inmates and does not constitute a constitutional violation.

Paragraph twenty complains about the refusal of the state parole board to parole two Move convicts at the earliest possible time. There is no right to immediate parole upon serving the minimum sentence. Furthermore, the appropriate way to seek release is through a habeas corpus action by the prisoners, rather than a civil suit by the Move Organization.

Paragraph twenty-one alleges that a Move member was "kidnapped off the streets of Rochester, N.Y. by federal ... agents" as a result of the warrant mentioned in paragraph seven. Just as paragraph seven fails to state a claim, so does paragraph twenty-one.

The final two paragraphs contain general language about a "blatant plot" and "diabolical conspiracy." This language is too vague on its own, and does not help repair the lack of specificity existing elsewhere in the complaint.

Thus, every part of the Supplemental Complaint must be dismissed as "frivolous" within the meaning of 28 U.S.C. § 1915.

## III. PROCEEDINGS IN FORMA PAUPERIS

Upon filing of a proper affidavit, a federal court may allow a "person" to proceed in forma pauperis.[17] *See* Fed.R.App.Pro. 24(a) and Form 4. A motion to proceed in forma pauperis and accompanying affidavits have been filed on behalf of the sole plaintiff Move Organization ("Move"). These papers present the court with the question of whether an organization is a "person" within the meaning of 28 U.S.C. § 1915, and if so, what constitutes a proper affidavit.[18]

In the few cases touching on these questions, the federal courts take a variety of positions.[19] On one extreme is Chief Judge

17. Under 28 U.S.C. § 1915(a) (1976):

Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

18. The court must rule on the motion even if the complaint is frivolous. *See, e.g., Sinwell v. Shapp,* 536 F.2d 15, 18–19 (3d Cir.1976). *See generally* Federal Judicial Center, *Recommended Procedures for Handling Prisoner Civil Rights Litigation in the Federal Courts* 56–57 (1980).

19. *See S.O.U.P., Inc. v. FTC,* 449 F.2d 1142, 1142–43 (D.C.Cir.1971) (corporation is not "person"); *id.* 1143–45 (Bazelon, C.J., dissenting) (corporation is "person"; single affidavit from corporate officer listing organizational resources is sufficient); *Harlem River Consumers Co-op., Inc. v. Associated Groceries,* 71 F.R.D. 93, 95–96 (S.D.N.Y.1976) (non-profit corporation suing under antitrust laws is person where shareholders do not stand to reap substantial benefit from suit, and where neither corpora-

tion nor shareholders can afford costs); *River Valley, Inc. v. Dubuque County,* 63 F.R.D. 123, 124–25 (N.D.Iowa 1974) (non-profit corporation formed to assist poor people may appear in forma pauperis when prevented by law from expending funds), *mandamus denied and appeal dismissed on other grounds,* 507 F.2d 582 (8th Cir.1974); *Honolulu Lumber Co. v. American Factors, Ltd.,* 265 F.Supp. 578, 580–81 (D.Hawaii 1966) (corporation not person; if it were, affidavits from shareholders required), *aff'd on other grounds,* 403 F.2d 49 (9th Cir. 1968). *See also Association for the Preservation of Freedom of Choice, Inc. v. Nation Co.,* 375 U.S. 899, 84 S.Ct. 190, 11 L.Ed.2d 142 (1963) (order denying petitioner leave to proceed in forma pauperis); *Siegel v. William E. Bookhultz & Sons,* 419 F.2d 720, 722 (D.C.Cir. 1969) (trial court appointed counsel for corporation unable to afford attorney); *Ad Hoc Com. on Consumer Protection v. United States,* 313 F.Supp. 119, 120 (D.D.C.1970) (3-judge court) (plaintiff granted leave to proceed in forma pauperis), *appeal dismissed for want of jurisdiction* 403 U.S. 901, 91 S.Ct. 2204, 29 L.Ed.2d 677 (1971). *See generally* Comment, *Proceedings In Forma Pauperis in Federal Court: Can Corporations Be "Persons"?,* 62 Calif.L.Rev. 219 (1974).

Bazelon's dissent in *S.O.U.P. v. FTC,* 449 F.2d 1142, 1143–45 (D.C.Cir.1971). Chief Judge Bazelon took the positions that a corporation is a "person" within the meaning of 28 U.S.C. § 1915, and that the judge must determine indigence by examining only the organization's resources, rather than by piercing the corporate veil. He reasoned that the law governing construction of statutes requires "that the term 'person' should ordinarily be taken to 'include corporations ... as well as individuals,' "[20] and that the legislative history of 28 U.S.C. § 1915 contained no indication that Congress meant otherwise. 449 F.2d at 1143–44. Furthermore, indigency should be determined on the basis of an affidavit from an organizational officer because the alternative (requiring affidavits from each member) would disregard the legally separate identity of the corporation, impose unnecessary administrative burdens on the court, and discourage useful litigation by certain corporations. *Id.* at 1144–45.

On the other extreme is *Honolulu Lumber Co. v. American Factors, Ltd.,* 265 F.Supp. 578, 580–81 (D.Hawaii 1966), *aff'd on other grounds,* 403 F.2d 49 (9th Cir.1968). Chief Judge Pence observed that from its initial enactment in 1892 until amendment in 1959, the in forma pauperis act applied only to a "citizen," and that only natural persons are citizens.[21] "Citizen" was changed to "person" to allow in forma pauperis appearances by aliens.[22] Thus, it ap-

peared, "that Congress never intended by this single word change in 1959 to extend this privilege to a whole new class of artificial persons." 265 F.Supp. at 580. Furthermore, assuming arguendo that a corporation could be a "person," Judge Pence held the affidavit of poverty insufficient because he viewed the stockholders of the closely-held corporations as the real beneficiaries of the lawsuit and there was "no reason why the true beneficiaries should be allowed to stand behind a corporate veil and thereby be excused from paying the legal costs of a suit which the corporation they controlled decided to institute." *Id.* at 581.

Between these extremes are cases and commentary suggesting that artificial entities may be "persons" in appropriate circumstances.[23] These sources rely on policy reasons in looking at factors such as whether the entity is non-profit, whether it is formed for a public purpose, whether the organization's members may reap "substantial personal financial benefit" from the litigation, *Harlem River Consumers,* 71 F.R.D. at 96, and whether the litigation has a "public interest aspect."[24] It is unclear whether these authorities would look to identical or similar factors in evaluating the sufficiency of the affidavit.

I reject this middle course, at least as a method of construction of "person." First, it confuses the definition of "person" with that of poverty.[25] Second, it is both vague and elaborate, thus confronting the courts

**20.** 449 F.2d at 1143 (quoting 1 U.S.C. § 1). In relevant part, that law provides that:

> In determining the meaning of any Act of Congress, unless the context indicates otherwise—
> . . . .
> the words "person" and "whoever" include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals; . . . .

1 U.S.C. § 1 (1976).

Judge Bazelon's logic applied equally well to other artificial entities named in 1 U.S.C. § 1, including associations.

**21.** *Atlantic S.S. Corp. v. Kelley,* 79 F.2d 339, 340 (5th Cir.1935); *Quittner v. Motion Picture Producers & Distributors, Inc.,* 70 F.2d 331, 332 (2d Cir.1934).

**22.** 265 F.Supp. at 580; *accord, e.g., S.O.U.P.,* 449 F.2d at 1144 n. 3 (Bazelon, C.J., dissenting).

This is the only reason given for the change in the committee reports. S.Rep. No. 947, 86th Cong., 1st Sess. 2–4 (quoting H.R.Rep. No. 650, 86th Cong., 1st Sess. 2–3 (1959)), *reprinted in* 1959 U.S.Code Cong. & Ad.News 2663, 2664–65. (The Senate report consists almost entirely of a reprint of almost all of the House report.)

**23.** *Harlem River Consumers,* 71 F.R.D. at 96; *River Valley,* 63 F.R.D. at 125; *see* Comment, *supra* note 19, at 235–52, 257.

**24.** *Harlem River Consumers,* 71 F.R.D. at 96; *River Valley,* 63 F.R.D. at 124–25; *see* Comment, *supra* note 19 at 239–52.

**25.** *See Harlem River Consumers,* 71 F.R.D. at 96; *River Valley,* 63 F.R.D. at 125.

with a threshold ruling which is unnecessarily burdensome to administer. Third, many of the factors are difficult to determine,[26] and it is unclear how to weigh them if they conflict.[27] Finally, although the policy analysis behind these factors may be a valid method of common-law rulemaking, it is inappropriate as a method of construing this statute.[28] It gives the word "person" a meaning which cannot reasonably be found in the intent of Congress. *See* note 20 *supra* and accompanying text.

■ The better reasoned approaches are those of Chief Judge Bazelon, dissenting in *S.O.U.P.,* that "person" includes the entities listed in 1 U.S.C. § 1, and Judge Pence, in *Honolulu Lumber,* that Congress intended to include only natural persons. I must choose between these two contradictory holdings. Because all authorities agree that the sole purpose for extending in forma pauperis status to "persons" was to include indigent aliens,[29] the rule as stated in *Honolulu Lumber* is the better reading of the legislative history. Accordingly, I agree that an artificial entity cannot be a "person" within the meaning of 28 U.S.C. § 1915(a). Thus the sole plaintiff, Move Organization, may not proceed in forma pauperis.

Even if plaintiff were a "person," the filed affidavits are insufficient to support forma pauperis status. They do not list Move's resources, nor is there an indication that the affiant is authorized to speak for the Organization.[30] Therefore, plaintiff's motion to proceed in forma pauperis is denied.

## IV. PRO SE APPEARANCE

■ The filings in this case are signed only by a lay person "Pro Se for the Move

26. While non-profit status might be ascertained by reference to tax exemptions, it is unclear how I should go about determining whether: the plaintiff was formed for "public purposes"; the financial benefit to be reaped is direct or indirect; the benefit is substantial; the litigation has a "public interest aspect"; who is the "primary beneficiary"; and whether the claims are nonself-interested. *See* note 30 *infra* and text accompanying notes 24–25 *supra.* To the extent that a method exists for making these determinations, the method does not yield clear results. For instance, does this frivolous, unspecific complaint have a sufficient "public—interest aspect" to satisfy that test?

27. *Compare, e.g., Harlem River Consumers,* 71 F.R.D. at 96 (antitrust treble-damage suit always has public-interest aspect weighing in favor of pauper status), *with Honolulu Lumber,* 265 F.Supp. at 581 (treble damages make financial benefits more substantial).

Furthermore, ignoring some, but not all, of the factors sometimes yields anomalous results. For instance, the Comment urging adoption of "primary beneficiary analysis," argues that the public-interest aspect is the determining test. Under that approach, leave to appear in forma pauperis should be granted when the primary beneficiary of the litigation is the public. This will occur if a corporation litigates a "nonself-interested claim." *See id.* at 250–52. Thus, the Comment ignores (or bars) the in forma pauperis motion of a non-profit corporation with a non-public-interest suit—for instance, a warranty claim relating to goods used in the corporation's office.

28. To the extent that it is a right, rather than a privilege, "[t]he right to appear in forma pauperis is wholly statutory." *Smith v. Firestone Tire & Rubber Co.,* 255 F.Supp. 905, 907 (E.D. Pa.1966), *aff'd per curiam on other grounds,* 374 F.2d 892 (3d Cir.1967).

29. *See S.O.U.P.,* 449 F.2d at 1144 n. 3 (Bazelon, C.J., dissenting); *Harlem River Consumers,* 71 F.R.D. at 95; *Honolulu Lumber,* 265 F.Supp. at 580; *see also* S.Rep. No. 947, 86th Cong., 1st Sess. 2–4, *reprinted in* 1959 U.S.Code Cong. & Ad.News 2663, 2664–65; H.R.Rep. No. 650, 86th Cong., 1st Sess. 2–3 (1959); 105 Cong.Rec. 18,909 (remarks of Sen. Eastland); *id.* at 13,714 (remarks of Rep. Rogers).

30. If an organization can indeed appear in forma pauperis, the preferable way to decide whether it is poor is that suggested by Judge Bazelon—examining only an organization's affidavit. Piercing the organizational veil, either by examination of the financial status of the organization's members, or evaluation of the factors accompanying the text at notes 23–24 *supra,* would place too great a burden on the court, at least at the initial stage of a case. These matters are best viewed as methods of deciding whether forma pauperis appearance is a subterfuge, and are best decided in the context of a motion by an opposing party.

I also note that, it does not appear from the papers of record that the individual who filed this action is authorized to do so on plaintiff's behalf. *See* note 32, *infra.*

Org."[31] This raises the question whether an organization must be represented by an attorney.

In general, a party may plead and conduct its case in person or by counsel. *See* 28 U.S.C. § 1654. Because organizational personality is a legal fiction, appearance in propria persona is impossible. Thus, the courts have repeatedly held that corporations and other organizations must be represented by counsel.[32] The purpose of this rule is "the protection of the courts and the administration of justice.[33] The frivolous pleadings in this case, *see* notes 1 & 2 *supra*, show why the courts require such protection. I see no reason to create an exception for an organization attempting to prosecute a civil action in its own name.[34]

**31.** Furthermore, the signer is not identified as a trustee, officer, employee, agent, or even a member of the plaintiff Organization.

**32.** As one court stated:

Corporations and partnerships, by their very nature, are unable to represent themselves and the consistent interpretation of § 1654 is that the only proper representative of a corporation or a partnership is a licensed attorney, not an unlicensed layman regardless of how close his association with the partnership or corporation.

*Turner v. American Bar Ass'n,* 407 F.Supp. 451 (N.D.Tex.1975), *aff'd sub nom. Pilla v. American Bar Ass'n,* 542 F.2d 56 (8th Cir.1976), *also aff'd mem. sub nom. Taylor v. Montgomery,* 539 F.2d 715 (7th Cir.1976); *accord, Phillips v. Tobin,* 548 F.2d 408, 411 (2d Cir.1976) (quoting *Turner*), *cert. petition not accepted,* 434 U.S. 809, 98 S.Ct. 42, 54 L.Ed.2d 67 (1977); *see, e.g., K.M.A., Inc. v. General Motors Acceptance Corp.,* 652 F.2d 398, 399 (5th Cir.1981) (corporation as a fictional legal person can only be represented by licensed counsel); *Siegel v. William E. Bookhultz & Sons,* 419 F.2d 720, 721 (D.C.Cir.1969) ("corporation could not continue *in propria persona*") (italics in original); *Simbraw, Inc. v. United States,* 367 F.2d 373, 373–75 (3d Cir.1966); *Brandstein v. White Lamps,* 20 F.Supp. 369, 370 (S.D.N.Y.1937) ("while a corporation is a legal entity, it is also an artificial one, existing only in the contemplation of the law"); *Mullin-Johnson Co. v. Penn Mutual Life Ins. Co.,* 9 F.Supp. 175, 175 (N.D.Cal.1934) (corporation can act only through agency of natural persons); *see also Commercial & R.R. Bank v. Slocomb, Richards & Co.,* 39 U.S. (14 Pet.) 60, 65, 10 L.Ed. 354 (1840), *overruled in part on other grounds, Louisville, C. & C. R.R. v. Letson,* 43 U.S. (2 How.) 497, 555, 11 L.Ed. 353 (1844); *Osborn v. President, Directors & Co. of the Bank of the United States,* 22 U.S. (9 Wheat.) 738, 830, 6 L.Ed. 204 (1824); *In re Victor Publishers, Inc. (Appeal of Pace),* 545 F.2d 285, 286 (1st Cir.1976); *Strong Delivery Ministry Ass'n v. Board of Appeals,* 543 F.2d 32, 33–34 (7th Cir.1976); *United States v. 9.19 Acres of Land,* 416 F.2d 1244, 1245 (6th Cir. 1969); *DeVilliers v. Atlas Corp.,* 360 F.2d 292, 294 (10th Cir.1966); *Flora Constr. Co. v. Fireman's Fund Ins. Co.,* 307 F.2d 413, 414 & n. 1 (10th Cir.1962), *cert. denied,* 371 U.S. 950, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *Heiskell v. Mozie,* 82 F.2d 861, 863 (D.C.Cir.1936) (en banc); *Minichiello Realty Assoc., Inc. v. Britt,* 460 F.Supp. 896, 899 (D.N.J.1978), *aff'd mem.,* 605 F.2d 1196 (3d Cir.1979); *Schreibman v. Walter E. Heller & Co.,* 446 F.Supp. 141, 143 (D.P.R.1978), *aff'd mem.,* 577 F.2d 723 (1st Cir. 1978); *James v. Daley & Lewis,* 406 F.Supp. 645, 648 (D.Del.1976); *Mercu-Ray Indus., Inc. v. Bristol-Myers Co.,* 392 F.Supp. 16, 19–20 (S.D.N.Y.1974), *aff'd mem.,* 508 F.2d 837 (2d Cir.1974); *MacNeil v. Hearst Corp.,* 160 F.Supp. 157, 159 (D.Del.1958). *But see* note 20 *infra. See generally* Cotner, *May a Corporation Act as Its Own Attorney?,* 16 Clev.Mar.L. Rev. 173 (1967); Note, *The Appearance of a Corporation Without an Attorney,* 7 Brooklyn L.Rev. 371 (1938); Note, *The Right to Appear in Proper Person in the Federal Courts,* 38 N.Y.U.L.Rev. 753, 758–59 (1963); Annot., 19 A.L.R.3d 1073 (1968).

**33.** *Mercu-Ray Indus.,* 392 F.Supp. at 19; *see, e.g., Simbraw,* 367 F.2d at 375 ("The confusion that has resulted in this case from pleadings awkwardly drafted and motions inarticulately presented likewise demonstrates the wisdom of such a policy."); *Heiskell,* 82 F.2d at 863 (rule "arises out of the necessity, in the proper administration of justice," of having proceedings carried on by officers of court in accordance with law); *see also Strong Delivery Ministry,* 543 F.2d at 33–34.

Because the policy is for the protection of the court, violation of the rule is appropriately raised sua sponte.

**34.** Some courts have created exceptions to the rule. *See e.g., Victor Publishers,* 545 F.2d at 286 n. 8 (corporate officer demonstrated extraordinary legal ability); *United States v. Reeves,* 431 F.2d 1187, 188–89 (9th Cir.1970) (per curiam) (where government sues to foreclose partnership property, and state law gives each partner a specific right to property, then individual partner may appear pro se because he is pleading his own case); *In re Holliday's Tax Serv., Inc.,* 417 F.Supp. 182, 183–85 (E.D.N.Y. 1976) (Weinstein, J.) (court has inherent power to allow bankruptcy debtor to be represented by sole shareholder), *aff'd mem.,* 614 F.2d 1287 (2d Cir.1979); *Willheim v. Murchison,* 206 F.Supp. 733, 736 (S.D.N.Y.1962) (layman-share-

holder may prosecute derivative action pro se because he is properly a plaintiff, and may represent himself and simultaneously present arguments common to corporate plaintiff), *appeal dismissed,* 312 F.2d 399 (2d Cir.1963); *cf. Church of the Visible Intelligence that Governs the Universe v. United States,* No. 574–79T (Ct.Cl. Feb. 20, 1981) (semble). *See generally* Annot., 19 A.L.R.3d 1073, 1082–87 (1968).

None of these exceptions applies here. Furthermore, there is no first-, fifth-, or sixth-amendment right to representation by a layman. *See Turner,* 407 F.Supp. at 480, 481. Finally, I note that plaintiff has obtained counsel in other cases in this court. *See Move Org'n v. City of Philadelphia,* 89 F.R.D. 521, 523 n. 1 (E.D.Pa.1981).